(No. 33163.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ARTHUR LA FRANA, Plaintiff in Error.

*Opinion filed November 18, 1954.*

John Paul Stevens, of Chicago, for plaintiff in error.

Latham Castle, Attorney General, of Springfield, and John Gutknecht, State's Attorney, of Chicago, (John T. Gallagher, Rudolph L. Janega, Arthur F. Manning, and Robert McDonnell, of counsel,) for the People.

Mr. Justice Schaefer delivered the opinion of the court:

Arthur La Frana, hereafter referred to as the defendant, filed a petition in the criminal court of Cook County under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1953, chap. 38, pars. 826-832,) to set aside his two convictions, one of murder, the other of robbery. The petition was dismissed on motion. This court denied a petition for writ of error, but that determination was vacated by the United States Supreme Court in *Jennings* v. *Illinois,* 342 U.S. 104. We then remanded the cause for a hearing on the merits. (*People* v. *Jennings,* 411 Ill. 21.) After a

hearing, the trial court denied the petition. We have allowed a writ of error.

The indictments upon which defendant was convicted involved separate offenses committed in 1937. The first indictment charged him with the murder of a cashier during the robbery of a motion picture theater, the second with the robbery of a liquor store. He pleaded not guilty to each indictment. He was first tried on the charge of murder, and was sentenced to life imprisonment. He then changed his plea to the robbery charge to one of guilty, and was sentenced to a concurrent term of one year to life.

While in police custody the defendant confessed to each of these crimes. The confession to the charge of murder was offered in evidence at the trial. Upon defendant's objection that it had been extracted by duress, the requisite preliminary hearing was held, and the court ruled that the confession was admissible. The admission of this confession into evidence upon his trial is the basis for defendant's petition to set aside his conviction for murder.

No contention is made that the confession of robbery was not freely given, but the defendant argues that he pleaded guilty to that charge only because he had already been sentenced for a term equal to the maximum he could be given on the robbery charge, and since the conviction for murder involved the use of a coerced confession, he characterizes the plea of guilty to robbery as being indirectly coerced.

On the record before us, defendant's plea of guilty may more plausibly be ascribed to the fact that he had voluntarily confessed to the crime. The prior sentence to life imprisonment was not the maximum punishment he could receive, since the sentence upon the robbery charge might have been made to run consecutively and thus have lengthened the period within which he would be ineligible for parole. But assuming the defendant's motive for pleading guilty to be as he states it, we see no basis for setting aside

the conviction. The record shows that he was properly admonished as to the consequences of his plea, and no allegation is made that the plea was coerced, or improperly induced. The situation resembles somewhat that in which a defendant seeks to withdraw his plea of guilty because he receives a heavier sentence than he expected. In such a case we do not hold that the trial court is obliged to grant a motion to withdraw the plea. (See, *e.g., People* v. *Chesnas,* 325 Ill. 361.) Acceptance of the plea of guilty to the robbery indictment involves no substantial denial of any constitutional rights. The conviction and sentence on the indictment for robbery must therefore stand, and the decision of the court below is affirmed in that respect.

At the post-conviction hearing the court heard the testimony of the defendant, several police officers, and others with respect to defendant's contention that his confession of murder was coerced. Portions of the transcript of the testimony at the original trial were also received in evidence. Defendant was arrested early in the morning of December 30, 1937, at his home. The arresting officers had no warrant. He was taken to a police station where he was not booked upon any charge but was held for investigation. He was questioned at length throughout the day concerning various robberies but no confession was obtained. The following day he signed statements admitting his participation in the robbery of a liquor store and of a bakery. No contention is made that these confessions were coerced.

After he signed these confessions he was questioned concerning the murder of a theater cashier and in the evening of December 31, he was taken to another police station, still without being booked on any charge. On January 1, he was transferred back to the original police station and questioned all day. No physical force was used by the police officers during the day of January 1. Likewise on January 2, defendant was questioned at length, but no force was used and no confession was obtained.

On January 3, defendant was removed to a third police station, where he was taken to the captain's office and questioned by several police officers. All of these facts are undisputed. There is sharp conflict, however, as to what happened on the night of January 3.

Defendant testified that he was taken to an upstairs room where he was left alone with Supervising Captain Goldberg, who told him that his co-defendants had confessed and that there was nothing for defendant to do but to join in the confession. According to defendant's testimony, when he refused to confess the captain hit him repeatedly with his fists and with a night stick. His hands were then handcuffed behind him and he was blindfolded. A rope was put in between the handcuffs and he was suspended from a door with his hands behind him and his feet almost off the floor. While he was hanging from the door, he was repeatedly struck until he lapsed into unconsciousness. When he lost consciousness he was taken down from the door and when he regained consciousness he would be hung back up on the door and again questioned and struck. After about fifteen minutes of this treatment he agreed to sign a confession. He was taken downstairs to the captain's office where he signed a confession.

Captain Goldberg testified that he was called into the case about 6:30 P.M. on January 3, when it became apparent that the defendant, and Davies and Peabody, his co-defendants in the murder trial, might be involved in the murder of the theater cashier. When he arrived at the station Davies and Peabody were downstairs and the defendant was being held in a room upstairs. Goldberg first talked with Davies and Peabody, who admitted having participated in the robbery and stated that the defendant had shot the cashier. Goldberg then went upstairs to inform the defendant of the statements made by Davies and Peabody. He found him handcuffed to a chair and being guarded by a policeman. Goldberg told the policeman to

leave, and then told defendant that Davies and Peabody had accused him of the murder. When defendant expressed disbelief, Goldberg proposed to take him downstairs to be confronted by the other suspects, and unlocked the handcuff that was attached to the chair. Defendant asked if he might use a lavatory which opened off the room, and was given permission to do so. When he came out of the lavatory he made a sudden dash toward the door leading to the stairs with the apparent purpose of making his escape. He was tackled by Goldberg, who held him down until another officer who was coming up the stairs arrived to help. Defendant was then taken downstairs, and confronted with the charges made by Davies and Peabody, whereupon he admitted his part in the crime. Goldberg testified that this was the only force used on the defendant in his presence. Two other officers testified that they had not seen the defendant beaten.

The People's contention that the prisoner's claim of a violation of constitutional rights cannot be advanced in this post-conviction proceeding is contrary to the law of the case. (See *People* v. *Jennings,* 411 Ill. 21.) Since the defendant raised the claim at the trial, there was no waiver, and since he was precluded by indigence from securing a direct review of his conviction, the decision of the trial court that his confession was voluntary is not *res judicata.*

While this court has not held that an illegal detention of itself renders a confession inadmissible, (see *People* v. *Fox,* 319 Ill. 606; *People* v. *Viti,* 408 Ill. 206; *People* v. *Hall,* 413 Ill. 615,) it has recognized the danger that such a detention may serve as a device to conceal the occurrence of physical duress, and has held that "illegal detention for questioning by police officers is a circumstance to be considered as to the voluntary character of the confession, * * *." (*People* v. *Hall,* 413 Ill. 615, 623; *cf. People* v. *Goldblatt,* 383 Ill. 176.) Indeed, the fact that the confession was made during an unlawful detention has been regarded as strongly corroborative of a claim of coercion.

*People* v. *Vinci*, 295 Ill. 419; *People* v. *Crabb*, 372 Ill. 347; *People* v. *Thomlison*, 400 Ill. 555.

Where the only evidence of coercion is the defendant's own testimony, and where this is contradicted by witnesses for the People, then of course the trial court may choose to believe the latter, and our recognition of the superior position of the trial court to evaluate the credibility of the witnesses before it makes us reluctant to reverse its determination. (*People* v. *Viti*, 408 Ill. 206; *People* v. *Varela*, 405 Ill. 236.) But where it is conceded, or clearly established, that the defendant received injuries while in police custody, and the only issue is how and why they were inflicted, we have held that something more than a mere denial by the police of coercion is required. Under such circumstances the burden of establishing that the injuries were not administered in order to obtain the confession, can be met only by clear and convincing testimony as to the manner of their occurrence. See *People* v. *Thomlison,* 400 Ill. 555.

In this case it is undisputed that defendant's wife, and an attorney who had been retained by his father, were refused permission to see him until after he had signed the murder confession. "The illegal detention, constant grilling and refusal to permit the defendant to talk with parents or counsel was relevant on the question whether the confession was voluntary." (*People* v. *Thomlison,* 400 Ill. 555, 564.) Defendant's testimony as to his physical condition after his confession is corroborated by the testimony of his attorney and of his wife, who has since remarried. A newspaper photograph taken shortly after the confession shows that his left cheek and right eye were swollen, and that there was a cut below his right eye and on his lower lip. The record of his physical examination when he was released from police custody and placed in the county jail on January 11, a week after the confession, shows that he had a black eye and abrasions on both wrists. The county physician who then examined him, and who had been exam-

ing numerous prisoners every day for twenty-two years, testified that the injuries to defendant's wrists could have been caused by hanging him over the door, and could not have been caused by the normal use of handcuffs.

The testimony on behalf of the prosecution fails short, in our opinion, of meeting the burden which rested upon it. It fails to account for the abrasions on both of defendant's wrists. Although, according to Captain Goldberg's testimony, there were "roughly a dozen or so newspapermen" around the station when the defendant allegedly attempted to escape, and although a dramatic break for freedom by one accused of murder would seem to be newsworthy, the newspaper story received in evidence with the photograph of defendant makes no mention of it. Moreover, the record is barren of any explanation as to why the defendant continued to be detained by the police for a week after he had confessed to the murder. Defendant's counsel suggests that the purpose was to allow time for the injuries received in the beating to heal up, so as to make it more difficult to prove that the beating had occurred. Whether or not this was the purpose, the People offered no testimony whatever to justify a continued detention which was not only unlawful, but which is not understandable in terms of their version of the facts.

In view of these considerations we are of the opinion that the conviction of the defendant upon the indictment for murder must be set aside. We need not consider the other contentions advanced by the defendant. The order of the criminal court of Cook County is reversed, and the cause remanded with instructions to set aside the conviction for murder and to grant a new trial on that charge, and to remand the defendant to the custody of the warden of the penitentiary to finish his sentence under the conviction for robbery.

*Affirmed in part, reversed in part and remanded, with directions.*