THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LEONARD HINTON, Defendant-Appellant.

First District (5th Division)    No. 1—97—1982

Opinion filed December 31, 1998.

GREIMAN, J., specially concurring.

Rita A. Fry, Public Defender, of Chicago (Pamela Leeming and Harold Winston, Assistant Public Defenders, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Theodore F. Burtzos, and Christine Cook, Assistant State's Attorneys, of counsel), for the People.

JUSTICE THEIS delivered the opinion of the court:

Following a bench trial, defendant Leonard Hinton was found guilty of six counts of murder and sentenced to natural life in prison without parole. On direct appeal, the conviction was affirmed, although three counts of murder were vacated. Defendant filed a *pro se* petition for postconviction relief pursuant to the Post-Conviction Hearing Act. 725 ILCS 5/122—1 (West 1992). His petition was supplemented thereafter by defendant's court-appointed attorney. The circuit court

dismissed the postconviction petition without an evidentiary hearing on the merits, and this appeal followed. We affirm.

## BACKGROUND

At approximately 5 p.m. on November 25, 1983, defendant was arrested pursuant to a warrant for aggravated battery. The detectives brought defendant to the Area 2 police station, where he was interrogated about an unrelated triple murder. On November 27, 1983, defendant gave a statement confessing to the murders of three individuals.

Prior to trial, defendant filed a motion to suppress his confession, claiming that his statement was the result of police brutality. At the suppression hearing, defendant testified that he suffered substantial abuse at the hands of the police until he ultimately confessed to the murders and that his numerous requests for an attorney were ignored. Specifically, defendant stated that he suffered the following abuse over a period of three days in custody.

Defendant was slapped in the face approximately 20 or 30 times and kicked in the stomach when he denied knowledge of the murders. The officers showed defendant a gun they claimed was the murder weapon. Defendant was struck over his head, on his elbow, and under the chin with the gun. As a result, his chin "bust[ed]" and blood dripped onto the football jersey defendant was wearing. After a lineup, he was slapped in the face again. The officers also pulled defendant away from the wall where his right hand was handcuffed, causing the feeling in his hand to disappear. Twice, a double plastic bag was placed over defendant's head which made him pass out.

According to defendant, an assistant State's Attorney (ASA) then questioned him about the murders. When defendant denied knowing about the murders, the ASA left the room and the officers returned for further beatings.

Defendant was not given any food and was denied use of the bathroom, which caused him to urinate on the floor. Because the officers were upset about the mess, they again kicked and slapped defendant. Defendant further claimed that Lieutenant Jon Burge advised him to confess before the other officers continued what they had been doing. Burge also inquired whether defendant knew about an electric rod.

Subsequently, defendant was brought to a room "down some stairs" where his hands and ankles were handcuffed. He was stripped from the waist down and gagged with some cloth. The officers brought in a black box and a rod with a cord. After turning a knob on the box, the officers placed the rod under defendant's genitals three times,

shocking him. At this time, defendant testified that he was ready to talk.

When defendant tried to tell the ASA that he was beaten, she left. Burge returned to warn defendant that they would have to "go through this situation all over again" if he mentioned the beatings and did not sign a statement. Defendant then gave and signed a statement.

The State's witnesses at the suppression hearing consisted of Burge, Detective Leonard Bajenski, Detective Thomas Krippel, Detective Patrick Mokry, and the ASA. All of these witnesses denied that any abuse occurred or that the events occurred as defendant related. Bajenski, Mokry, and the ASA further testified that defendant did not request an attorney.

At the conclusion of the suppression hearing, the circuit court denied defendant's motion to suppress the statement. Finding that the decision involved a "credibility question," the court made its ruling based on the demeanor of the witnesses and the evidence presented. Consequently, the case went to trial.

At trial, the State presented a witness, Diana Staton. She testified that she heard gunshots the night of the murders. Shortly thereafter, she observed defendant leaving the residence where the murders occurred. Staton also saw that defendant held a gun in his hand as he exited the building. Another witness, David Dixon, testified that defendant told him that "he had to shoot a couple of people" because he was owed money. Defendant's confession also was introduced in which he admitted to the shootings.

Defendant testified on his own behalf. He stated that he shot one of the victims as they were "tussling" over a gun, but he was not aware when he left the scene that the other individuals had been shot. Defendant also admitted that his confession was true except for the part about being owed $200. In addition, the football jersey was marked for identification purposes but it was not introduced as evidence. He identified a mark on the right shoulder as his blood resulting from being hit under the chin by the police. On cross-examination, defendant stated that it was the same shirt he wore on the night of the murders.

The court found defendant guilty. Upon direct appeal, his conviction was affirmed on October 13, 1987. On May 9, 1989, defendant filed a *pro se* postconviction petition, prompting the State to file a motion to strike and dismiss. Defendant's petition was supplemented by appointed counsel, and on April 17, 1997, the circuit court denied defendant's petition without holding an evidentiary hearing.

The matter is now before this court on defendant's postconviction

petition, where he presents six claims in support of his request for an evidentiary hearing.

## ANALYSIS

■ Filing a petition pursuant to the Post-Conviction Hearing Act does not entitle a defendant to an evidentiary hearing as a matter of right. Rather, the allegations in the petition must show a substantial deprivation of a constitutional right as supported by the trial record or accompanying affidavits. *People v. Hobley*, 182 Ill. 2d 404, 428, 696 N.E.2d 313, 325-26 (1998) (*Hobley II*). Moreover, the scope of postconviction review is limited by the doctrines of *res judicata* and waiver. These doctrines generally preclude issues that were raised or could have been raised on direct appeal from being considered in the postconviction proceeding. *People v. Thompkins*, 161 Ill. 2d 148, 157-58, 641 N.E.2d 371, 375-76 (1994). Whether a defendant is entitled to an evidentiary hearing requires that all well-pleaded facts in the petition and affidavits be taken as true. *People v. Maxwell*, 173 Ill. 2d 102, 107, 670 N.E.2d 679, 680-81 (1996). Eliminating these factual issues makes the determination of whether the allegations are sufficient to grant a hearing a legal question requiring plenary appellate review. *People v. Coleman*, 183 Ill. 2d 366, 388, 701 N.E.2d 1063, 1075 (1998).

## I

Defendant first argues that he was denied effective assistance of counsel both at the appeal and trial levels and, therefore, he has shown a substantial deprivation of a constitutional right entitling him to an evidentiary hearing. According to defendant, the torture he endured and the denials of his requests for an attorney caused him to make an involuntary confession in violation of his fifth amendment rights. Defendant moved to suppress this confession prior to trial, presenting as evidence only his testimony detailing the alleged abuse. In that testimony, he stated that an officer hit him under the chin with a gun, causing him to bleed onto his jersey. The jersey was not introduced at the hearing. Defendant claims that his counsel should have introduced the bloodstained jersey at the hearing. By failing to do so, counsel was ineffective. Defendant asserts also that his appellate counsel was ineffective for failing to raise this issue on direct appeal.

■■ Although this issue could have been raised on direct appeal, the waiver doctrine is inapplicable where, as here, the defendant asserts that the alleged waiver stems from ineffective assistance of appellate counsel. *People v. Winsett*, 153 Ill. 2d 335, 346, 606 N.E.2d 1186, 1193 (1992). To determine whether counsel was ineffective, a defendant must establish that counsel's performance fell below an objective standard of reasonableness and that defendant was so

prejudiced by the substandard performance that a reasonable probability exists that, absent counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984); *Hobley II*, 182 Ill. 2d at 451, 696 N.E.2d at 336. It is unnecessary to address whether counsel's performance was constitutionally deficient if the defendant did not suffer prejudice. *People v. Mahaffey*, 165 Ill. 2d 445, 458, 651 N.E.2d 174, 182 (1995). Here, defendant cannot show that there is a reasonable probability that the outcome of his trial would have been different had his bloody jersey been presented at the suppression hearing.

■ At the hearing, the only evidence presented was testimony, thereby making the circuit court's determination one based on the witnesses' credibility. *People v. Wilson*, 116 Ill. 2d 29, 40, 506 N.E.2d 571, 575 (1987), quoting *People v. La Frana*, 4 Ill. 2d 261, 267, 122 N.E.2d 583, 586 (1954) (if defendant's testimony is the only evidence that a confession was obtained through coercion and the State's witnesses testify otherwise, the circuit court is permitted to believe the State's witnesses over the defendant). Defendant contends that, had the jersey also been introduced as evidence of his injury, the State's witnesses' mere denials of abuse would have been insufficient. Instead, clear and convincing evidence would have been necessary to show that his injuries did not result as a means of procuring a confession. However, before the State's burden increases, defendant must "clearly establish" or make it "evident" that he received the injuries while in custody. *Wilson*, 116 Ill. 2d at 40, 506 N.E.2d at 575; *La Frana*, 4 Ill. 2d at 267, 122 N.E.2d at 586. See also *Maxwell*, 173 Ill. 2d at 121, 670 N.E.2d at 687. Once defendant satisfies his burden, only then is the State required to show by clear and convincing evidence that the injuries occurred in order to produce a confession. *People v. Woods*, 184 Ill. 2d 130 (1998). *People v. Hobley*, 159 Ill. 2d 272, 294, 637 N.E.2d 992, 1002 (1994) (*Hobley I*), quoting *Wilson*, 116 Ill. 2d at 40, 506 N.E.2d at 575.

Taking as true defendant's allegation that there was blood on his shirt, it is not "clearly established" or "evident" that defendant was injured. The shirt is not evidence of an injury. In *Wilson*, bodily injury was clearly established by the medical reports of observable cuts, bruises, abrasions, and burns on the defendant's body. *Wilson*, 116 Ill. 2d at 38, 506 N.E.2d at 574. In *Woods*, physical injury was evident where photographs showed that he sustained injuries to his left eye and forehead. *Woods*, 184 Ill. 2d at 148-49. Unlike those defendants, this defendant has no such observable injuries. He did not submit any photographs or medical testimony as proof of an injury. Nor did he

introduce any additional witnesses to testify that they had observed defendant suffering from injuries. A bloodstained jersey is not a factual basis upon which to argue that defendant suffered bodily harm. Without evidence of any injury, the State is not required to present clear and convincing evidence. See *People v. Orange*, 168 Ill. 2d 138, 154, 659 N.E.2d 935, 942 (1995) (counsel not ineffective where no factual basis existed for the motion as there was no evidence of defendant's purported injuries, the photographs did not show physical trauma, and witnesses testified that he was not harmed).

Nor does Detective Bajenski's testimony that he did not see blood on defendant's shirt hours after he was arrested "clearly establish" that he sustained an injury. From Bajenski's answer that he did not see blood, defendant argues that the blood was not present when he was arrested. Defendant is asking that we infer that the blood was absent at the time of arrest because Bajenski denied seeing it. However, this testimony is too tenuous to make the inference that defendant wishes us to make. Additionally, as we have already noted, the jersey is not evidence of an injury.

In view of the foregoing, defendant has not shown a reasonable probability that the outcome of the suppression hearing would have been different had trial counsel presented the bloody jersey and, therefore, it is unnecessary to determine whether defendant's attorneys performed competently. *Mahaffey*, 165 Ill. 2d at 461, 651 N.E.2d at 183-84. Because defendant was not denied effective assistance of counsel, he cannot establish a substantial deprivation of a constitutional right such that an evidentiary hearing was required.

## II

■ Defendant next argues that he was entitled to an evidentiary hearing because he had new evidence which showed "systematic torture" at the Area 2 police station. In support, he attached numerous documents to his petition, including an affidavit from an Illinois attorney, reports from the Office of Professional Standards detailing the abuse at Area 2, and a newspaper article discussing instances of police brutality. He also attached documents from *People v. Banks*, 192 Ill. App. 3d 986, 549 N.E.2d 766 (1989), and findings from the police board of the City of Chicago regarding Area 2. Finally, defendant submitted his own affidavit, which stated that he would not have testified at trial if his statement had been suppressed. Allegedly, these materials were not available until after defendant's direct appeal. Contending that the torture was carried out by officers with the consent and knowledge of Burge, the commanding officer at Area 2, defendant insists that this evidence would impeach the credibility of the officers who denied torturing him.

The courts in *Hobley I* and *Hobley II* were faced with this same issue. In *Hobley I*, the circuit court barred the trial testimony of three people who claimed they were abused by an officer who allegedly abused Hobley. On direct appeal, the supreme court enumerated the following elements to determine whether the evidence should have been admitted: (1) the prior allegations of police brutality must not be unduly remote; (2) the prior allegations of police brutality must be against the same officer and similar to the allegations put forth by the defendant; and (3) in both the prior allegations of abuse and the case before the court, there must be evidence of injury consistent with police brutality. *Hobley I*, 159 Ill. 2d at 312, 637 N.E.2d at 1010. Applying those elements, the court found that allegations as to two of the individuals were dissimilar to defendant's allegations and, therefore, were not relevant. As to the third individual, the court determined that there was no evidence that either this individual or the defendant sustained injuries consistent with their claims of police brutality. Without evidence of injury, it was not error to exclude the prior allegations of abuse. *Hobley I*, 159 Ill. 2d at 312, 637 N.E.2d at 1010.

Hobley came before the supreme court again on a postconviction petition in *Hobley II*. He contended that he had newly discovered evidence to show prior police brutality at Area 2. This new evidence consisted of a report from the Office of Professional Standards and transcripts of testimony from other alleged victims of abuse. *Hobley II*, 182 Ill. 2d at 447, 696 N.E.2d at 334. The court reaffirmed its analysis from *Hobley I*. *Hobley II*, 182 Ill. 2d at 448-49, 696 N.E.2d at 335 ("[o]ur determination on direct appeal that defendant did not suffer injuries consistent with his claims of abuse is not altered by defendant's new evidence").

Similarly, defendant also has not presented evidence of injury. Defendant's only "evidence" of injury is his bloodstained jersey but, as discussed in section I, the shirt does not clearly establish a bodily injury. Nor has defendant demonstrated any injuries commensurate with his allegations of being slapped, kicked, hit with a gun, shocked, suffocated, and pulled away from a wall with such force that his hand went numb. Because defendant has not established an injury, he is not entitled to a hearing.

## III

■ Defendant's third argument is that defendant's due process rights under *Brady v. Maryland*, 373 U.S. 83, 87, 10 L. Ed. 2d 215, 218, 83 S. Ct. 1194, 1196-97 (1963), were violated when the State failed to disclose all exculpatory information regarding prior instances where Burge tortured suspects to procure a confession. Defendant

contends that this information would have undermined Burge's and the other officers' credibility.

This argument is unavailing, however, because in the previous argument defendant claims that such information constituted "new evidence" and was not available until after defendant's trial. If the information was not available for trial, it cannot be said that the State failed to disclose the information in violation of *Brady*.

## IV

■ For his fourth contention, defendant asserts that his due process rights were violated when his conviction was obtained as a result of the perjured testimony of the ASA and police officers Burge, Bajenski, Krippel, and Mokry. Defendant argues that their testimony was material because they denied defendant's allegations of a coerced confession. A hearing is necessary, he maintains, to determine whether the perjury occurred. Presumably, defendant believes that this argument is viable on postconviction review because it is based on new evidence discovered since trial.

When a defendant alleges perjury, the petition or attached materials must identify with reasonable certainty the source of the alleged evidence of the perjury, that the evidence is available, and of what the evidence would consist. *People v. Tompkins*, 176 Ill. App. 3d 245, 248, 530 N.E.2d 677, 679 (1988).

Defendant has attached documents indicating that Burge and other officers at Area 2 tortured suspects in order to procure confessions. However, this information does not remotely suggest that the officers and ASA engaged in abuse and lied in this case. First, Burge is the only officer criticized in the reports who allegedly is involved in this case. Although the reports may address other instances of abuse by Burge, they have no bearing on the present case. *Mahaffey*, 165 Ill. 2d at 464, 651 N.E.2d at 185; *People v. Jones*, 156 Ill. 2d 225, 245, 620 N.E.2d 325, 333 (1993). Prior instances of abuse do not indicate that abuse occurred to obtain defendant's confession. Similarly, whether Burge lied about other instances of abuse is no indication of whether he did so here.

Second, defendant has not provided the source of the alleged evidence of perjury as to the other officers and the ASA. Notably, none of the materials indicate that the officers here were found to have engaged in abuse of arrestees. Further, the materials do not contain any information regarding whether the officers committed perjury. There also is nothing to suggest that the ASA knew about the alleged abuse and then committed perjury during the proceedings. Defendant must provide some basis for the allegations of perjury in order to

receive a hearing. Because these materials do not evince even a suggestion of perjury in this case, defendant is not entitled to a hearing.

## V

■ In his fifth claim, defendant argues that he received ineffective assistance from his trial counsel because counsel failed to contact the office of the Cook County public defender and inquire about other instances of police brutality at Area 2.

This issue could have been raised on direct appeal but was not; therefore, it is waived. *Maxwell*, 173 Ill. 2d at 107, 670 N.E.2d at 680. There are circumstances when issues that were not raised on direct appeal will be considered in a postconviction petition. However, these circumstances are limited and defendant must explain why his case falls within one of those situations. Defendant fails to provide any reason for failing to raise the issue on direct appeal, so he has waived this argument.

Moreover, defendant cannot establish ineffective assistance of counsel. Where the circumstances known to counsel at the time of investigation do not reveal a sound basis for inquiry into a certain issue, it is not ineffective for counsel to forgo further inquiry. *Orange*, 168 Ill. 2d at 150, 659 N.E.2d at 941 (not ineffective to forgo inquiry where the only evidence supporting defendant's allegation of abuse was his testimony and a questionable entry on a paramedic's report). Here, there was no evidence of injury other than defendant's testimony. The allegedly bloody shirt was not evidence of injury. Furthermore, neither the petition nor the accompanying materials indicate when trial counsel had access to this shirt. See *Hobley II*, 182 Ill. 2d at 452, 696 N.E.2d at 336 (defendant's claim that medical records and personnel would illustrate his condition before the arrest was speculative because he made no showing that the information was available). Defendant has not established that there was a sound basis for further inquiry.

Additionally, defendant cannot establish that he was prejudiced by counsel's alleged lack of investigation. In a similar set of facts, the supreme court held in *Orange*:

> "Even if trial counsel had conducted a broader investigation of defendant's claims of police brutality, it is unlikely that such an investigation would have changed the outcome. The medical examination reports did not support a claim of physical abuse, and the defendant exhibited no evidence of trauma. There were no witnesses to the alleged brutality. Therefore, there is no reasonable probability that even if trial counsel had investigated further, a motion to suppress defendant's confession would have been granted."
> *Orange*, 168 Ill. 2d at 151, 659 N.E.2d at 941.

In the present case, there were no medical reports to bolster defendant's claim of abuse, nor were there any photographs of injuries or supporting witness testimony. It is not reasonably probable that the motion to suppress would have been granted if trial counsel had investigated further.

## VI

■ In his final claim, defendant contends that the circuit court abused its discretion when it prevented defendant from obtaining complaints of police brutality against the officers involved in defendant's alleged torture. In January 1993, defendant issued subpoenas *duces tecum* to the Chicago police department (department) requesting any complaints involving excessive force against the officers identified in defendant's case. Pursuant to policy, the department only honors subpoenas in response to court orders. Thus, defendant moved to obtain the police disciplinary records of the officers involved. The State filed a motion to quash, contending that defendant waived the issue of his allegedly coerced confession by failing to raise it on direct appeal. The circuit court agreed.

Defendant argues that, "[c]ontrary to the trial court's reasoning, the issue was not waived because Appellate Counsel was ineffective to raise it." However, he did not claim ineffective assistance of counsel in the circuit court. Further, defendant goes on to argue that the information regarding torture at Area 2 was unavailable at the time of defendant's trial and thereby constitutes new evidence. Defendant cannot claim that his counsel was ineffective if this new evidence was unavailable on direct appeal. Accordingly, defendant's argument must be based on a claim of new evidence.

Pursuant to *Hobley II*, defendant's argument fails. This "new evidence" would not cure defendant's inability to establish that he sustained an injury. Therefore, even if he had received the information, the outcome in this case would not change. The circuit court did not abuse its discretion in denying defendant access to the information.

For the foregoing reasons, the circuit court's dismissal of defendant's postconviction petition for relief without an evidentiary hearing is affirmed.

Affirmed.

HOURIHANE, P.J., concurs.

JUSTICE GREIMAN, specially concurring:

The majority appears to hold that, absent some objective, visible injury to the defendant, the State does not bear the burden of coming forward with clear and convincing evidence that the defendant's confession was not the product of improper coercion. Although that appears to comport with the rule recently laid down in *People v. Woods*, 184 Ill. 2d 130 (1998), *People v. Wilson*, 116 Ill. 2d 29 (1987), *People v. Hobley*, 159 Ill. 2d 272 (1994) (*Hobley I*), and *People v. Hobley*, 182 Ill. 2d 404 (1998) (*Hobley II*), this ought to be known as "the reasonable and prudent torturer rule" since it provides a premium for one who tortures with care.

While the majority is correct that stains of blood, if they exist at all, are not enough to raise the bar on the State's burden, here there is other evidence that corroborates the defendant's suppression hearing testimony of improper police conduct and, in the real world, that should be sufficient. In *People v. Cannon*, 293 Ill. App. 3d 634 (1997), the court found that the newly discovered evidence—the incidence of systematic abuse of suspects—came within the ambit of "special circumstances" so as to allow reconsideration of the issues decided at the suppression hearing.

Insofar as I am able, I would follow the *Cannon* holding, which speaks to our duty to insure that a defendant's fifth amendment rights are observed and protected; however, *People v. Maxwell*, 173 Ill. 2d 102 (1996), arises out of the same efforts by a defendant to rely upon the newly discovered investigations of Area 2 which disclose the pattern of brutality directed at suspects in custody. Our supreme court found that without some evidence of injury, evidence of the treatment of other suspects could not, by itself, be the basis for a new evidentiary hearing. Although *Cannon* discusses the fact that the officers checked out shotguns on the day defendant was questioned and defendant claimed that a shotgun had been placed in his mouth, there is little else to distinguish these cases. Moreover, *Cannon* is further compelling because the interrogation of the defendant in the case at bar is cited there as evidence of improper police conduct, Hinton being arrested only 23 days after the defendant in *Cannon*.

One of the important things that I have learned in life is the importance of knowing one's place. We are an intermediate court of review and are bound to follow the decisions of our supreme court. Accordingly, I must reluctantly follow *Maxwell*.

This case has another interesting twist. At trial, the defendant took the stand and testified to most of the matters set out in his forced confession. I do not believe this to be a waiver of his rights since the use of a defendant's forced confession as substantive evidence can never be harmless error. *Wilson*, 116 Ill. 2d 29, 506 N.E.2d 571.