THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EARL WILSON, Defendant-Appellant.

First District (3rd Division)    No. 1—97—1050

Opinion filed August 11, 1999.

Frederick F. Cohn, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Christine Cook, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BURKE delivered the opinion of the court:

Defendant Earl Wilson appeals from the circuit court's order

dismissing his amended petition for postconviction relief without an evidentiary hearing. Defendant contends that (1) he was denied his constitutional right to conflict-free trial counsel; (2) the court erred in failing to hold an evidentiary hearing; and (3) the court erred in denying his discovery motion to depose his trial counsel. Defendant seeks a reversal of the dismissal of his postconviction petition or, alternatively, a remand for an evidentiary hearing. For the reasons set forth below, we affirm.

Defendant was represented during his arraignment and the preliminary hearings by trial counsel Robert Edwards, who had filed his appearance on January 13, 1987, and by both trial counsel Edwards and Leo Fox, who had appeared as cocounsel at the commencement of defendant's jury trial on December 2, 1987. The jury subsequently found defendant guilty of the first degree murders of Willie "Flukey" Stokes, a major Chicago drug dealer, and Ronald Johnson, a chauffeur for Stokes. The court sentenced defendant to natural life imprisonment without parole. Defendant appealed, represented by appellate attorneys Sam Adam and Marc Martin. This court affirmed defendant's conviction. *People v. Wilson*, 196 Ill. App. 3d 997, 554 N.E.2d 545 (1990). The evidence adduced during the preliminary hearings and at trial is detailed in our opinion on direct appeal. See *Wilson*, 196 Ill. App. 3d 997, 554 N.E.2d 545. Accordingly, we will reiterate only those facts relating to the underlying offense and prior proceedings germane to defendant's alleged constitutional issues raised in this appeal.

On November 18, 1986, the date of the victims' murders, defendant was a paid undercover narcotics informant for the Chicago police department and the Cook County State's Attorney's office. Defendant, in his capacity as undercover informant, was temporarily employed as Stokes' bodyguard and surveilling Stokes' activities. Unbeknownst to the police and the State's Attorney's office, however, defendant had also entered into an alleged oral agreement with Elliott Taylor, a reputed drug dealer to whom defendant was indebted. The alleged oral agreement between defendant and Taylor was that defendant would set Stokes up for an armed robbery on November 18, 1986, in exchange for Taylor's agreement to forgive defendant's indebtedness.

At defendant's trial, the evidence indicated that shortly after midnight on November 18, 1986, defendant's car had been double-parked behind Stokes' car when several men approached the two cars and murdered Stokes and Johnson. While the victims' car was riddled with bullet holes, defendant's car remained untouched by gunfire. The police apprehended defendant at the crime scene and eventually arrested him after gathering the records of mobile telephone conversations made minutes before the murders by defendant to another

person at a telephone number registered in Elliott Taylor's name. The evidence also revealed that defendant had been keeping Elliott Taylor, allegedly the person on the other end of the cellular telephone line, apprised of the direct route travelled in the city by Stokes and Johnson. Elliott Taylor was never charged in the murders nor was he called as a witness at defendant's trial. Defendant was subsequently convicted of the first degree murders of Stokes and Johnson, and he appealed.

On defendant's direct appeal, this court affirmed his conviction. *Wilson*, 196 Ill. App. 3d at 1016. Defendant then filed a *pro se* petition for relief pursuant to the Illinois Post-Conviction Hearing Act (725 ILCS 5/122—1 *et seq.* (West 1996)), alleging that his constitutional rights had been substantially denied at trial due to trial counsel Leo Fox's ineffective assistance. Defendant claimed that Fox had a conflict of interest caused by his simultaneous representation of Elliott Taylor in an unrelated case and that Fox refused to grant his request to call Taylor as a witness at his trial. Defendant did not attach any affidavits to his petition in support of his allegations.

Defendant subsequently retained private counsel, who filed an amended postconviction petition. In the amended petition, defendant claimed that he had been denied his right to effective assistance of trial counsel because trial counsel, Leo Fox and Robert Edwards, had a conflict of interest. Defendant alleged that Fox and Edwards had represented Elliott Taylor, an alleged suspect in defendant's case, in two unrelated cases: one prior to defendant's trial and the other simultaneous with defendant's trial. Defendant also alleged that Taylor had paid trial counsel Edwards and Fox to represent defendant. In support of his allegations, defendant attached police records that allegedly showed that Taylor, though not charged with defendant for the murders of Stokes and Johnson, "was the person the Office of the State's Attorney of Cook County and the Chicago Police thought was primarily responsible for the death of Willie (Flukey) Stokes." Defendant also attached records of appearances filed by Edwards and Fox on behalf of Taylor in the two unrelated cases. These records showed that Edwards had represented Taylor from February 1984, when Taylor was charged with possession of a controlled substance, through March 1987, when Taylor's conviction was affirmed on appeal. The records further showed that both trial counsel Edwards and Fox had filed appearances on behalf of Taylor in a theft case in January 1987, and Edwards again filed his appearance on behalf of Taylor in the same case on February 18, 1988. Defendant also submitted his affidavit, in which he averred that Taylor had selected trial counsel Edwards and Fox to represent him during his trial and had paid their legal fees; he was

unable to negotiate with the State and provide information against Taylor because of the conflict of interest posed by his trial counsel's simultaneous representation of Taylor; his decisions in the case were affected by his trial counsel's simultaneous representation of Taylor; he would have obtained different counsel had he been aware that his trial counsel were simultaneously representing Taylor in an unrelated case; and, after his conviction, he had provided an assistant United States Attorney with information concerning Taylor. In addition, defendant filed a motion to depose his trial counsel to substantiate the allegations contained in his petition.

The State filed a motion to dismiss and a supporting affidavit of trial counsel Robert Edwards. See 725 ILCS 5/122—6 (West 1996). Edwards averred in his affidavit that Elliot Taylor had neither retained him nor paid him to represent defendant. Edwards stated that defendant's wife, Peggy Wilson, had paid defendant's legal fees. The postconviction judge, the same judge who had presided over defendant's trial, granted the State's motion and dismissed defendant's petition without an evidentiary hearing. See generally 134 Ill. 2d R. 651. In his ruling, the judge found that defendant was not entitled to an evidentiary hearing because he had "failed to demonstrate *** an actual conflict of interest [and had] failed to make any substantive showing of ineffective assistance of counsel." This appeal followed.

Defendant contends that he was denied his right to conflict-free trial counsel because Edwards and Fox, prior to and during the proceedings that resulted in his conviction, had represented and owed an obligation to Elliott Taylor, "a suspect in the cause" who had paid Edwards and Fox to represent defendant. Defendant argues that, but for his trial counsel's ethical obligations and financial indebtedness to Taylor, he would have entered into plea negotiations with the State and offered damaging information about Taylor in order to receive a lesser sentence than the mandatory life sentence. Defendant maintains that his trial counsel's conflict of interest denied him his constitutional right to effective assistance of counsel and, therefore, the trial court erred in failing to hold an evidentiary hearing. The State argues that defendant has waived this issue on review because it could have been, but was not, raised in his direct appeal. The State alternatively argues that the trial court did not err in denying an evidentiary hearing based on defendant's allegations of conflict of interest because defendant failed to support his allegations with facts, failed to show a conflict of interest, and could not establish prejudice since his life sentence was mandatory.

■ The Illinois Post-Conviction Hearing Act provides a supplemental proceeding for a defendant who alleges that he was substantially

denied his constitutional rights at trial. See 725 ILCS 5/122—1 (West 1996); *People v. Coleman*, 183 Ill. 2d 366, 378-79, 701 N.E.2d 1063 (1998). Filing a postconviction petition, however, does not entitle a defendant to an evidentiary hearing as a matter of right. See *People v. Evans*, 186 Ill. 2d 83, 89, 708 N.E.2d 1158 (1999); *Coleman*, 183 Ill. 2d at 381; *People v. Hinton*, 302 Ill. App. 3d 614, 619, 706 N.E.2d 1017 (1998). Rather, the allegations contained in the postconviction petition must sufficiently demonstrate a constitutional infirmity that occurred at the original trial, and the allegations must stand uncontradicted and clearly be supported by either the trial record or accompanying affidavits. See *Coleman*, 183 Ill. 2d at 380-81; accord *Hinton*, 302 Ill. App. 3d at 619. When determining whether to grant an evidentiary hearing, all well-pleaded facts in the petition and in any accompanying affidavits, in light of the original trial record, are to be taken as true. See *Coleman*, 183 Ill. 2d at 380-82. Nonfactual and nonspecific assertions amounting to mere conclusions are insufficient to require a hearing under the Act (see *Coleman*, 183 Ill. 2d at 381) and, upon a motion to dismiss, a trial court may summarily dismiss a postconviction petition without requiring extrinsic evidence if the trial record shows the petition to be without merit (see *People v. Morris*, 43 Ill. 2d 124, 128, 251 N.E.2d 202 (1969); accord *Coleman*, 183 Ill. 2d at 381-82 (noting that a dismissal of a postconviction petition has consistently been upheld when the trial court record contradicts the allegations contained in the petition)).

A trial court's dismissal of a postconviction petition is reviewed *de novo*. See *Coleman*, 183 Ill. 2d at 387-89. Our review, however, is limited to resolving allegations of constitutional violations that occurred at trial when those allegations have not been and could not have been raised on direct appeal. See *Evans*, 186 Ill. 2d at 89; *Hinton*, 302 Ill. App. 3d at 619. "[A]ny issue that could have been presented on direct appeal, but was not, is waived." *People v. Thomas*, 164 Ill. 2d 410, 416, 647 N.E.2d 983 (1995); accord *People v. Henderson*, 171 Ill. 2d 124, 133, 662 N.E.2d 1287 (1996); *People v. Stewart*, 123 Ill. 2d 368, 372, 528 N.E.2d 631 (1988). Specifically, the failure to raise a claim of ineffectiveness of trial counsel in the direct appeal renders the issue waived in postconviction proceedings. See *People v. Orange*, 168 Ill. 2d 138, 149, 659 N.E.2d 935 (1995); *People v. Thompkins*, 161 Ill. 2d 148, 157-58, 641 N.E.2d 371 (1994). In addressing the issue of waiver, our supreme court has stated:

> "Failure to raise a claim which could have been addressed on direct appeal is a procedural default which results in a bar to consideration of the claim's merits in a post-conviction proceeding. [Citation.] ***

*** [T]he mere fact that support for a claim is contained in papers not in the trial record is largely immaterial. Reason to relax the bar occurs only when what is offered in the papers also explains why the claim it supports could not have been raised on direct appeal." *People v. Erickson*, 161 Ill. 2d 82, 87-88, 641 N.E.2d 455 (1994).

■ There are two well-recognized exceptions to the waiver rule. First, a claim of incompetence of counsel in a postconviction proceeding will not be barred where the attorney who represented the defendant at trial also represented the defendant on direct appeal. See *People v. Winsett*, 153 Ill. 2d 335, 346, 606 N.E.2d 1186 (1992); see also *People v. Ford*, 99 Ill. App. 3d 973, 976, 426 N.E.2d 340 (1981) (stating that the "rationale for this exception is that it is unreasonable to expect appellate counsel to argue his own incompetency effectively"); see generally *Hinton*, 302 Ill. App. 3d at 619 (finding that the waiver doctrine was inapplicable because the alleged waiver stemmed from ineffective assistance of appellate counsel). Second, the waiver rule will be relaxed if either the evidentiary basis for the claim of ineffectiveness is not contained within the original trial court record and, therefore, could not be considered by a reviewing court on direct appeal or if the facts relating to the competency of trial counsel are newly discovered. See *People v. Steidl*, 177 Ill. 2d 239, 250-51, 685 N.E.2d 1335 (1997); *People v. Britz*, 174 Ill. 2d 163, 177, 673 N.E.2d 300 (1996).

In the case at bar, defendant contends that his trial counsel's conflict of interest denied him their effective assistance. Therefore, defendant asserts, he has shown a substantial deprivation of a constitutional right entitling him to an evidentiary hearing.

■ We find that defendant has waived this issue for review because he could have raised, but did not raise, the issue on direct appeal, and neither of the two exceptions to the waiver rule applies. Our examination of the record on appeal reveals, first, that Edwards and Fox were defendant's trial counsel and Adam and Martin were defendant's appellate counsel. Thus, appellate counsel Adam and Martin could have argued, but did not argue, on direct appeal the alleged incompetency of trial counsel Edwards and Fox. Second, the evidentiary basis for defendant's claim of ineffectiveness is contained within the original trial court record, which reveals that both the trial court and defendant were aware that trial counsel Fox was simultaneously representing Elliott Taylor in an unrelated case. Immediately before trial, the following colloquy took place in chambers between the trial court, trial counsel Edwards, trial counsel Fox, and defendant:

"THE COURT: All right. For the record, we are in chambers. \*\*\* The defendant is represented by Robert Edwards. It is my understanding that Leo Fox is going to file an appearance, and he will be the second chair, as it were, in this case?

MR. EDWARDS: That is correct, Judge.

THE COURT: All right. Mr. Wilson [defendant], Mr. Fox, when he was here earlier, indicated that he wanted to make sure the record reflected that you understand that he represents Mr. Taylor.

THE DEFENDANT: Yes, sir.

THE COURT: All right, and the record should be clear that in regards to that, you have no problem with him representing you, also, even though he represented, and I don't know what happened to that case, but someone who has, in some respects, been named or is in some ways part of this trial, you have no problem with Mr. Fox representing you and/or, also, Mr. Taylor?

THE DEFENDANT: No, sir.

THE COURT: All right.

\* \* \*

MR. FOX: Judge \*\*\* let the record note my name is Leo Fox. Let the record note that I am assisting in the defense with Mr. Edwards for the defendant. Judge, there is a case pending, People vs. Elliott Taylor, in another building in this system. I represent Mr. Taylor. That information has been relayed to the defendant; is that correct, sir?

THE DEFENDANT: Yes, sir.

MR. EDWARDS: Maybe I should advise Mr. Fox that the conspiracy count has been nolled.

THE COURT: Let him finish his statement. I have ruled on it, but you may make it clearer than I did.

MR. FOX: And consequently, with that knowledge, you still wish me to be your attorney; is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: All right. The State has nolle prosequi'd [*sic*] count seven, which is the conspiracy."

This discussion, which neither defendant nor the State mentions in its briefs, contradicts defendant's allegation that he was unaware that trial counsel Fox had simultaneously represented Taylor in an unrelated case while representing defendant at trial. The discussion shows that Fox fully disclosed to both the court and to defendant his simultaneous representation of Taylor in a different matter, and it also shows defendant's knowledge of and consent to that simultaneous representation. Fox's disclosure and defendant's knowledge and consent are fixed in the trial court record, and defendant's failure to raise his allegation of a conflict of interest on direct appeal is a procedural default

that bars our consideration of the merits of his claim. See generally *International Insurance Co. v. City of Chicago Heights*, 268 Ill. App. 3d 289, 302-04, 643 N.E.2d 1305 (1994) (stating that a party waives any objection to an alleged attorney conflict of interest if he fails to assert that conflict promptly and no reason exists suggesting the inapplicability of the waiver doctrine).

The original trial court record contains further evidence that defendant's ineffectiveness-of-counsel claim based on an alleged conflict of interest could have been raised on direct appeal. During the State's case in chief, the State attempted to elicit from a testifying police officer whether the cellular telephone used by defendant had been listed in Elliott Taylor's name. Trial counsel Fox objected, and the following sidebar discussion ensued:

"MR. FOX: Judge, we believe it's improper for [the] State to use police records in reference to Mr. Taylor.

THE COURT: Mr. Taylor is not on trial.

MR. FOX: They are trying to make him accountable for Mr. Taylor. He is on trial. He is actually the main person in this trial. ***

THE COURT: Maybe you shouldn't represent [defendant]. Your interest is more in Mr. Taylor. Early on we found out that you represented him. And now maybe there is a conflict between your representation of [defendant]. And *** your representation of Mr. Taylor. Because it seems to me that you are more interested in protecting the name of Mr. Taylor.

MR. FOX: That's incorrect.

THE COURT: I don't see how Mr. Taylor's record effects [*sic*] [defendant].

MR. FOX: Excepting for the fact that what they are trying to make him accountable for somebody; and by inference they're showing that this somebody has a police record.

THE COURT: Well, okay. How would you like in the interest of fairness and honesty a stipulation to correct this matter?

MR. FOX: I think it should not be referred to *** at all.

THE COURT: How would you like this stated ***?

MR. FOX: Do you have any knowledge of what it is, without referring to the *** police record.

MR. O'BRIAN [Assistant State's Attorney]: Fine. I will withdraw the question."

Shortly thereafter, trial counsel Fox moved for a mistrial based on the cellular telephone testimony and also on the State's introduction of a blowup of Taylor's mug shot. The following colloquy then occurred:

"MR. FOX: *** The Court alluded to the fact that I represent Mr. Taylor, which I do in another matter. But the basis of the mo-

tion [for a new trial] was whether the reference to Mr. Taylor's arrests were prejudicial in this case without Mr. Taylor being put on the stand or some other valid basis for entering into the evidence before the jury his arrest.

And this has nothing to do with the fact that I represent him. It could have been Mr. X or Y. ***

           * * *

THE COURT: *** I think the State has a right to put forth every bit of evidence they have and I think that this evidence that they have introduced is probative as to the matters being tried and litigated here and *** they have shown certainly as far as Elliott Taylor is concerned *** a strong case that Elliott Taylor was involved in this proceeding and whether or not it is one and the same Elliott Taylor you represent or another Elliott Taylor, that of course is for the jury to decide ***.''

The above discussions show that the issues presented by defendant's ineffectiveness-of-counsel claim based on an alleged conflict of interest were apparent from the original trial court record and, thus, could have been raised on direct appeal by defendant's appellate counsel. Because defendant failed to raise this claim in his direct appeal, we are procedurally barred from considering the merits of the claim raised in defendant's postconviction petition.

Defendant, however, attempts to circumvent the procedural bar under the exception pertaining to matters that were not a part of the record on direct appeal. Defendant directs our attention to documents relating to trial counsel's representation of Elliott Taylor in a prior unrelated narcotics case and in a simultaneous unrelated theft case. These documents, although not contained in the original trial court record, are largely immaterial to defendant's claim because they do not explain why the claim they support could not have been raised on direct appeal. See *Erickson*, 161 Ill. 2d at 87-88. Moreover, we note that these documents could have been, but were not, filed as a supplement to the appellate record under Supreme Court Rule 329 (134 Ill. 2d R. 329).

We also briefly note that the cases relied upon by defendant in support of his argument that his ineffectiveness-of-counsel claim is not barred under the waiver doctrine are distinguishable and, contrary to defendant's assertion, do not militate against our finding of waiver. The issues raised in *People v. Thomas*, 38 Ill. 2d 321, 231 N.E.2d 436 (1967), and *People v. Nix*, 150 Ill. App. 3d 48, 501 N.E.2d 825 (1986), unlike the issues raised in the case at bar, could not have been addressed on direct appeal because not every ground for ineffectiveness that the defendants in *Thomas* and *Nix* had raised was apparent from the original respective trial court records or could have

been filed as a supplement to the respective records. Here, the facts relating to defendant's ineffectiveness of counsel claim based on a conflict of interest appeared in the original trial court record. In *Dawan v. Lockhart*, 980 F.2d 470 (8th Cir. 1992), the defendant's trial attorney, who had also represented the defendant in his direct appeal, had not brought to the trial court's attention, either at or after trial, the fact that he had simultaneously represented two of the codefendants who had conflicting stories, and the defendant had not presented this issue on direct appeal or in his subsequent *pro se habeas corpus* petition. In the present case, Taylor was not a codefendant at defendant's trial, trial counsel Fox disclosed to the court his simultaneous representation of Taylor in an unrelated case, and defendant had been represented by different counsel on appeal who could have raised the issue of ineffectiveness of counsel based on a conflict of interest on direct appeal.

We find that neither of the two exceptions to the waiver rule applies and, therefore, defendant has waived his postconviction contention that he was denied effective assistance of counsel based on a conflict of interest. Notwithstanding defendant's waiver, defendant's contention would fail.

■ Defendant contends that his trial counsel's simultaneous representation of Elliott Taylor was a *per se* unconstitutional conflict. Our supreme court has held that joint representation of criminal defendants does not give rise to a *per se* violation of the guaranty of effective assistance of counsel unless defense counsel had a prior or contemporaneous association with either the prosecution or the victim. *People v. Spreitzer*, 123 Ill. 2d 1, 14, 525 N.E.2d 30 (1988). In the case at bar, Taylor was not a codefendant, a witness for the State, or one of the victims. Accordingly, no *per se* conflict of interest existed. A second example of conflict occurs when there is joint representation of codefendants and a showing of prejudice. *Spreitzer*, 123 Ill. 2d at 17. In the instant case, there was never any joint representation, nor could there have been, since the State had nol prossed the initial charge of conspiracy.

Defendant's reliance on *People v. Fuller*, 21 Ill. App. 3d 437, 315 N.E.2d 687 (1974), and *Goodson v. Peyton*, 351 F.2d 905 (4th Cir. 1965), in support of his argument that his trial counsel's simultaneous representation of Taylor was a *per se* unconstitutional conflict, is misplaced. In *Fuller*, the defendant's attorney had entered into a contract between himself, the defendant, and the defendant's mother to handle publication rights to the defendant's memorabilia concerning the crimes with which the defendant had been charged. In finding no conflict of interest, the *Fuller* court noted that "Illinois has adopted a

per se rule where counsel's conflict of interest arises from a commitment to others, but that it has not, thus far, adopted such a rule where the conflict arises in another fashion." *Fuller*, 21 Ill. App. 3d at 442. In the present case, there was no *per se* conflict. Defendant's trial counsel did not have a commitment to Elliott Taylor in the instant case because Taylor was never charged with the murders with which defendant was charged nor called as a witness at defendant's trial. In *Goodson*, a Commonwealth attorney for a neighboring county had been appointed to represent the defendant. In his appeal, the defendant complained that his representation by an attorney whose responsibility as a public official to seek enforcement of the law demonstrated a conflict of interest because the attorney had a commitment to others (*i.e.*, the public at large) that conflicted with the attorney's responsibility to the defendant. In affirming the defendant's conviction, the *Goodson* court stated that it found no conflict and refused to apply a *per se* rule when the conflict asserted did not involve a commitment to others within the concept of the dual representation of codefendants with conflicting interests. In the present case, defendant had no codefendants.

■ Defendant further argues that the alleged conflict of interest posed by his trial counsel's simultaneous representation of Elliott Taylor prevented him from negotiating with the State and providing information against Taylor to obtain a sentence other than the natural life sentence he received. He maintains that his trial counsel did not pursue plea negotiations because he would then have had to testify against Taylor, his trial counsel's other client. Defendant's argument is a mere conclusional allegation. Defendant failed to support his argument with conversations between his trial counsel and himself. Specifically, defendant did not allege that he had told his trial counsel that he had wanted to enter into plea negotiations with the State and cooperate against Taylor, nor did he allege that his trial counsel had told him that he could not enter into plea negotiations with the State and cooperate with the authorities by testifying against Taylor. Defendant also did not provide an affidavit from the State indicating that the State was interested in entering into plea negotiations. Illinois case law provides that "[m]ere conclusions are insufficient to entitle defendant to an evidentiary hearing." *People v. Dean*, 226 Ill. App. 3d 465, 469, 589 N.E.2d 888, 891 (1992). Moreover, defendant's allegation is rebutted by his own trial testimony. Although defendant gave the police a court-reported statement implicating himself and Taylor, defendant testified under oath that the contents of the statement were not truthful and that Taylor was not at the scene of the murders and did not make arrangements with him to set up Willie Stokes for an armed

robbery. This testimony belies defendant's allegation in his postconviction petition that he would have provided damaging evidence against Taylor and would have negotiated a reduced sentence with the State had his trial counsel not been ineffective.

Defendant's reliance upon *People v. Curry*, 178 Ill. 2d 509, 687 N.E.2d 877 (1997), is misplaced. In *Curry*, the court held that the defendant had been denied his right to effective assistance of counsel during plea negotiations with the State because his counsel had failed to explain the ramifications of rejecting the State's plea offer. *Curry,* 178 Ill. 2d at 528-36. In the present case, there is no evidence in the record that the State had offered a plea arrangement to defendant. We further note that defendant cites to numerous other cases that are factually distinguishable from the present case because each refers to either joint representation of codefendants or simultaneous representation of a government witness. See *Holloway v. Arkansas*, 435 U.S. 475, 55 L. Ed. 2d 426, 98 S. Ct. 1173 (1978) (joint representation of codefendants); *Glasser v. United States*, 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457 (1942) (joint representation of codefendants); *People v. Lee*, 271 Ill. App. 3d 1093, 649 N.E.2d 457 (1995) (joint representation of codefendants); *Griffin v. McVicar*, 84 F.3d 880 (7th Cir. 1996) (joint representation of codefendants); *Selso v. Kaiser*, 81 F.3d 1492 (10th Cir. 1996) (joint representation of codefendants); *United States v. Cook*, 45 F.3d 388 (10th Cir. 1995) (simultaneous representation of government witness); *Castillo v. United States*, 34 F.3d 443 (7th Cir. 1994) (joint representation of codefendants and attorney allegedly told one codefendant not to testify because his testimony would hurt the other codefendant's case); *United States v. Locascio*, 6 F.3d 924 (2d Cir. 1993) (disqualification of defense counsel due to joint representation of codefendants); *United States v. Martin*, 965 F.2d 839 (10th Cir. 1992) (joint representation of codefendants); *United States v. Moscony*, 927 F.2d 742 (3d Cir. 1991) (joint representation of defendant and government witness); *United States ex rel. Gray v. Director, Department of Corrections*, 721 F.2d 586 (7th Cir. 1983) (joint representation of codefendants); *Baty v. Balkcom*, 661 F.2d 391 (5th Cir. 1981) (joint representation of codefendants); *United States ex rel. Hart v. Davenport*, 478 F.2d 203 (3d Cir. 1973) (joint representation of codefendants); *United States ex rel. Zembowski v. DeRobertis*, 771 F.2d 1057 (7th Cir. 1985) (joint representation of codefendants); *United States v. Ring*, 878 F. Supp. 134 (C.D. Ill. 1995) (joint representation of government witness); *Marmol v. Dubois*, 855 F. Supp. 444 (D. Mass. 1994) (joint representation of codefendants); *United States v. Gotti*, 771 F. Supp. 552 (E.D.N.Y. 1991) (joint representation of codefendants). Unlike the cases cited by defendant, Elliott Taylor was not a codefendant of de-

fendant, and he was not a witness or called to testify at defendant's trial.

We also observe that defendant has cited no case law, nor has our research revealed any, holding that a defendant's trial counsel had a conflict of interest because the defendant's trial counsel simultaneously represented, in an unrelated case, a potential codefendant. Defendant assumes a conflict, the existence of which is dubious. Defendant points to his own affidavit in which he alleges that Elliott Taylor had selected trial counsel Edwards and Fox to represent defendant at trial and had paid their legal fees. Defendant does not offer supporting evidence regarding this conclusional allegation. Additionally, we find that his allegation is rebutted, first, by trial counsel Edwards and also by the trial court record. Edwards stated in his affidavit that he had been retained by defendant and had received his legal fees to represent defendant, not from Taylor, but from defendant's wife. Additionally, the trial court record reveals that defendant's attorneys were representing defendant at his direction. Specifically, the following exchange occurred between Edwards and defendant during defendant's pretrial hearings on defendant's motion to quash arrest and suppress evidence:

"Q. Now, when [the police] were questioning you in reference to Mr. Stokes and Mr. Taylor, did you make any requests of them?

A. I told them, I kept telling them, you know, I wanted to call my lawyer.

Q. Did you tell them who your lawyer was?

A. Yes.

Q. And who was your lawyer at that time?

A. Robert L. Edwards, you."

Moreover, the trial court record contains an affidavit signed by Edwards which includes the following statement:

"No part of any attorney's fee or any portion of recovery by suit or settlement herein has been paid or promised to be paid to any person whatever, other than [defendant] and his attorneys of record herein ***."

This affidavit is significant evidence contrary to defendant's allegation that his trial counsel had been paid by Taylor.

■ Defendant's trial testimony and the trial record contradict defendant's unsupported postconviction allegations and, thus, defendant failed to satisfy his burden of making a substantial showing of a denial of effective assistance of counsel based on a conflict of interest. See *People v. Eddmonds*, 143 Ill. 2d 501, 510, 578 N.E.2d 952 (1991). See generally *People v. Treadway*, 245 Ill. App. 3d 1023, 1025, 615 N.E.2d 887 (1993) (rev'd and remanded on other grounds) (stating

that a trial court will generally dismiss a postconviction petition that is not supported by affidavits other than the defendant's averments). Accordingly, in light of the fact that defendant's postconviction claims were not based on the record, not supported by any affidavits other than defendant's own averments, and did not contain specific facts, the trial court properly denied defendant an evidentiary hearing on his petition. See *People v. Gaines*, 105 Ill. 2d 79, 91-92, 473 N.E.2d 868 (1984).

Defendant raises one other contention, tangentially related to his claim of ineffectiveness of trial counsel. Defendant contends that he was denied his right to due process as a result of the trial court's denial of his motion to depose his trial counsel and that this denial prevented him from substantiating his claim that his trial counsel had deprived him of his constitutional right to conflict-free counsel. The State maintains that the trial court properly precluded defendant's discovery request as it was "nothing short of a fishing expedition."

■ The Illinois Post-Conviction Hearing Act does not provide for the taking of discovery depositions in postconviction proceedings. Accordingly, a trial court possesses the inherent discretionary authority to order discovery, only after a hearing, on motion of a party, and for good cause shown. See *People ex rel. Daley v. Fitzgerald*, 123 Ill. 2d 175, 183, 526 N.E.2d 131 (1988); accord *People v. Olinger*, 176 Ill. 2d 326, 371, 680 N.E.2d 321 (1997).

In the present case, as discussed above, defendant's contention that he was denied his right to conflict-free counsel was too conclusional and speculative to warrant discovery. Defendant, therefore, failed to show good cause to require discovery, and the trial court properly exercised its discretion in denying defendant's discovery request.

We briefly note that the cases upon which defendant relies in support of his discovery argument are distinguishable. In *Bracy v. Gramley*, 520 U.S. 899, 138 L. Ed. 2d 97, 117 S. Ct. 1793 (1997), a petitioner seeking federal *habeas corpus* relief made a specific factual showing to establish good cause for discovery on his claim of actual judicial bias in his case. In *Amadeo v. Zant*, 486 U.S. 214, 100 L. Ed. 2d 249, 108 S. Ct. 1771 (1988), another petitioner seeking federal *habeas corpus* relief provided the court with direct inculpatory evidence of intentional racial discrimination in the composition of the master jury lists to warrant discovery. Unlike *Bracy* and *Amadeo*, defendant's allegations here were too conclusional and speculative to warrant a discovery deposition.

For the reasons stated, we affirm the circuit court's order dismissing defendant's amended petition for postconviction relief.

Affirmed.

CAHILL, P.J., and CERDA, J., concur.