(No. 76897

*In re* C.J., a Minor (The People of the State of Illinois, Appellant, v. C.J., a Minor, Appellee).

*Opinion filed June 22, 1995.*

HARRISON, J., dissenting.

Roland W. Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Arleen C. Anderson, Assistant Attorney General, of Chicago, and Renee Goldfarb, Veronica X. Calderon, Michael Cho and Theodore Fotios Burtzos, Assistant State's Attorneys, of counsel), for the People.

Rita A. Fry, Public Defender, of Chicago (Karen M. Florek, Assistant Public Defender, of counsel), for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

The State appeals from an order of the juvenile division of the circuit court of Cook County dismissing its petition for adjudication of wardship of respondent, C.J.

FACTUAL AND PROCEDURAL BACKGROUND

The Department of Children and Family Services (DCFS) received and investigated a report of alleged child abuse involving C.J. The report alleged that C.J. had performed an act of digital penetration on his three-year-old cousin.

On the basis of the DCFS report, the State filed a petition for adjudication of wardship of C.J. The petition

alleged that on or about May, 4, 1991, C.J., who was 12 years old at the time, committed the offense of aggravated criminal sexual assault on his three-year-old cousin. The State sought to have C.J. adjudicated a delinquent minor and moved the court to permit the introduction of "outcry testimony" of the minor victim. See Ill. Rev. Stat. 1991, ch. 38, par. 115—10.

In its motion, the State specifically alleged that on May 8, 1991, the alleged victim stated to her mother that she did not want to visit her aunt's home. When asked why, the victim stated that the last time she visited, C.J. took her into a closet and sexually assaulted her. When asked if this had ever happened before, the victim stated that it had happened the last time C.J. spent the night, May 4, 1991.

In the interim, DCFS mailed C.J.'s parents a letter advising that the report of suspected abuse had been "unfounded." The letter also stated that an "unfounded" determination means that credible evidence of child abuse or neglect has not been found. Further, the letter stated that if the respondent believed the report had been filed against him falsely, he could make a written request, within 10 days, that the report be retained in the DCFS files.

C.J., on four separate occasions, subpoenaed records from the Division of Child Protective Services (Division) concerning the "unfounded" report. The Division, however, failed to respond.

On February 3, 1992, C.J. moved the court to order the State to produce "all records, reports, notes or other information regarding an Unfounded Illinois Department of Children and Family Services investigation." The court granted C.J.'s motion; the State, however, produced no records with respect to the investigation. Additional motions were filed to compel the production of the DCFS records; however, none were produced.

Finally, on February 14, 1992, Shirley Burton, an employee of the Division, appeared in court, represented by counsel, Marilyn Woods. Attorney Woods informed the court that DCFS failed to discover any report on C.J.'s case. Therefore, according to Woods, Burton had determined that the report against C.J. had been unfounded. Also, according to Woods, Burton contacted the agency's Springfield office and was informed that the allegations against C.J. were unfounded. After checking the Division's files, Burton opined that the agency's records had been expunged.

Woods further explained to the court that, unless retention of an unfounded report of child abuse is expressly requested by the alleged abuser, such report is routinely expunged. Woods informed the court that, according to C.J.'s attorney, C.J.'s mother had requested that the report be retained. However, there was nothing to indicate whether the request had been received by DCFS. We note that other than Woods' statement, there is nothing in the record to indicate that C.J. requested retention of the report.

C.J. advised the court that he had spoken with the DCFS caseworker who had investigated the report; however, the worker had no independent recollection of the case without her case notes. C.J. did, however, have the letter from DCFS stating that the report of alleged abuse was "unfounded."

The court indicated that without the investigator's notes, reports, or file, the court could make no determination concerning the significance of the "unfounded" finding.

On April 8, 1992, as a sanction for the State's failure to comply with discovery, C.J. moved the court to dismiss the State's petition. In support of his motion, C.J. argued that the undisclosed records were exculpatory, and that he could not effectively cross-examine the

child victim without her prior inconsistent statement, allegedly contained in the report.

In his written motion, C.J. asserted that DCFS is an agency of the State of Illinois and acts as an investigatory agency for the Cook County State's Attorney. Because the State assumed responsibility over the acts of its "agent," the DCFS's loss of the "exculpatory" evidence was imputable to the State. Respondent stated that he was not, however, alleging "abuse" on the part of the State.

In response, the State advised the court that respondent's claim constituted an alleged violation of *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194. Further, the State asserted, in order to prevail on a claim under *Brady*, the respondent was required to demonstrate bad faith on the part of the State. The State additionally offered that the DCFS caseworkers, as well as the victim, her mother, and other witnesses involved in the "outcry" were available to testify and to be cross-examined at "trial."

The court stated that it was not accusing the State of intentionally destroying the evidence. The court concluded, however, that where an agency under the control of the State destroys evidence, a defendant is denied due process of law. The court also rejected the State's offer of the caseworker's testimony as sufficient, noting that the DCFS worker's testimony would be negligible without her notes. The court then dismissed the State's petition.

The State appealed. The appellate court held that "when the DCFS acts in the discharge of its investigative responsibilities, it is a prosecutorial agent of the State." Because DCFS was a prosecutorial agent of the State under the circumstances of this case, it follows, the court reasoned, that all the information in its possession relating to its investigation is considered to be

under the possession and control of the State. Thus, the court held, the loss or destruction of the reports and records in issue constituted a denial of respondent's due process rights, imputable to the State. The court, therefore, affirmed the trial court's dismissal of the petition. 257 Ill. App. 3d 900, 903.

We granted the State's petition for leave to appeal (145 Ill. 2d R. 315), and now reverse the judgment of the appellate court, vacate the juvenile court's order dismissing the petition and remand the cause to the juvenile court for further proceedings.

## DISCUSSION

The ultimate issue to be decided in this appeal is whether the juvenile court's dismissal of the State's petition was proper. Respondent asserts that the destruction of the potentially exculpatory evidence may be imputed to and chargeable against the State's Attorney as a violation of respondent's due process rights. (See *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194.) We disagree, and for the reasons which follow, we find that dismissal of the petition was improper.

Preliminarily, we consider whether the loss of evidence in issue here may be imputed to the State's Attorney. We reject out of hand any notion that child protective service investigators, simply by virtue of their mandate to investigate reports of suspected child abuse and neglect, are a prosecutorial arm of the State. Such a conclusion has far-reaching practical and negative implications for both agencies in the performance of their separate and distinct duties.

The State's Attorney is a constitutional officer who represents the people in matters affected with a public interest. (Ill. Const. 1970, art. VI, § 19; *People ex rel. Kunstman v. Nagano* (1945), 389 Ill. 231.) The DCFS, on the other hand, is a legislatively created agency charged

with the duty to protect and promote the welfare of the children of Illinois. (*People v. Johnson* (1991), 221 Ill. App. 3d 588.) Given that child abuse has both criminal and social welfare implications, DCFS and the State's Attorney may naturally share some involvement in a particular case. However, that criminal prosecution may result from that involvement is insufficient to impute knowledge between the agencies. "If this court were to conclude that the knowledge of every State employee who is involved in a criminal case is imputed to the prosecution, the control over criminal cases would be placed in the hands, and at the mercy, of every employee who touches the case." *People v. Robinson* (1993), 157 Ill. 2d 68, 80.

Clearly, where DCFS acts at the behest of and in tandem with the State's Attorney, with the intent and purpose of assisting in the prosecutorial effort, DCFS functions as an agent of the prosecution. See *Robinson*, 157 Ill. 2d 68 (imputation of such knowledge requires an individualized focus on the factual circumstances); see also ABA Standards for Criminal Justice 11—2.1(d) (1968) (rule which describes persons whose possession or control of material and information could be imputed to the prosecutor); see also ABA Standards for Criminal Justice § 11—2.1(d), Commentary (1968) (stating that the effect of Standard 2.1 is to charge the prosecutor with responsibility for material and information known to persons *within the prosecutor's scope of authority* while discharging the prosecutor from responsibility for material and information known to government employees "who have no connection with the prosecution and, for practical purposes, may be regarded as third parties").

There is no evidence to support the conclusion that the DCFS investigator here functioned, intentionally or otherwise, as an aid in the prosecution of this case. Thus,

imputation of responsibility for the destroyed evidence to the State's Attorney was error. DCFS's destruction of the evidence can provide no basis for dismissal of the petition.

Even assuming imputation to the State, dismissal of the petition was improper for the additional reason that respondent suffered no deprivation of due process. *Brady* left unanswered when disclosure of exculpatory evidence must be made to a defendant. However, we find significant that in the context of criminal trials, the concept of fairness implicit in due process does not mandate pretrial discovery. (See *Cicenia v. LaGay* (1958), 357 U.S. 504, 2 L. Ed. 2d 1523, 78 S. Ct. 1297; 134 Ill. 2d R. 412(c), Committee Comments, at 348; see also *People v. DeWitt* (1979), 78 Ill. 2d 82, 85 ("due process does not guarantee pretrial discovery to a criminal defendant unless the defendant is also required to furnish similar discovery to the State").) In the interest of avoiding surprise, unfairness and inadequate preparation, however, upon the defendant's request, our Rule 412(c) requires pretrial disclosure of exculpatory evidence. (134 Ill. 2d R. 412(c); *Robinson*, 157 Ill. 2d at 79.) Thus, while the failure to disclose exculpatory evidence, pretrial, might later be determined grounds for reversal, such failure does not rise to the level of a constitutional deprivation.

This case comes to us at the stage of preadjudication discovery. *In re Gault*, which provides the most comprehensive analysis on the process due in the context of juvenile proceedings, expressly did not pass on procedures or constitutional rights applicable to the prejudicial stages of the juvenile process. (*In re Application of Gault* (1967), 387 U.S. 1, 13, 18 L. Ed. 2d 527, 538, 87 S. Ct. 1428, 1436.) Reasoning by analogy to criminal proceedings, we conclude that preadjudication discovery is not constitutionally mandated in juvenile proceedings. Consistent with that reasoning, we note that our criminal

pretrial discovery rules have not been made applicable to juvenile proceedings. (See 134 Ill. 2d R. 411.) Even our civil discovery rules are not automatically applicable in delinquency proceedings, but are permissible as a matter of discretion. (See *People ex rel. Hanrahan v. Felt* (1971), 48 Ill. 2d 171.) Thus, even concluding respondent's entitlement to the evidence, because preadjudication discovery is not constitutionally mandated, we cannot say that the nondisclosure, which occurred in the context of preadjudication discovery, had yet ripened into a due process violation. Dismissal of the State's petition on that basis was, therefore, premature. *Cf. State v. Jackson* (D.C. App. 1970), 261 A.2d 511 (holding that the government's failure to comply with pretrial discovery orders did not then establish a denial of juvenile's due process rights).

Even assuming that due process required preadjudication disclosure of the evidence, we would yet find no constitutional deprivation. Respondent views the nondisclosure as violative of *Brady*, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194. Under *Brady*, "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87, 10 L. Ed. 2d at 218, 83 S. Ct. at 1196-97.

We agree with the appellate court that *Brady* and its progeny apply in the context of juvenile proceedings. However, we disagree that *Brady* operates in a case, such as this, where evidence has been either lost or destroyed. The *Brady* analysis is simply ill-suited to cases in which the evidence is either lost or destroyed. *People v. Hobley* (1994), 159 Ill. 2d 272, 307; see also *Arizona v. Youngblood* (1988), 488 U.S. 51, 102 L. Ed. 2d 281, 109 S. Ct. 333.

Further, the due process concerns implicated in

*Brady* make the good or bad faith of the State irrelevant when the State fails to disclose material exculpatory evidence. However, due process concerns require a different result when the court is confronted with the failure of the State to preserve evidentiary material of which no more can be said than that it might have exonerated the defendant. (*Youngblood*, 488 U.S. at 57, 102 L. Ed. 2d at 289, 109 S. Ct. at 337.) Therefore, where evidence has been lost or destroyed, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Youngblood*, 488 U.S. at 58, 102 L. Ed. 2d at 289, 109 S. Ct. at 337; see also *Hobley*, 159 Ill. 2d 272; *People v. Ward* (1992), 154 Ill. 2d 272.

In *Hobley*, 159 Ill. 2d 272, the defendant asserted a *Brady* violation where the State failed to supply any report and results of fingerprint tests. This court rejected the claim as being covered under *Brady*. Applying, instead, the analysis in *Youngblood*, we stated that achieving the proper balance between promoting the preservation of evidence and not rewarding a defendant for its inadvertent loss may be accomplished through careful consideration of "(1) the degree of negligence or bad faith by the State in losing the evidence, and (2) the importance of the lost evidence relative to the evidence presented against the defendant at trial." *Hobley*, 159 Ill. 2d at 307.

We then first noted that the defendant had failed to show any bad faith on the part of the State. Secondly, and more importantly, there was independent evidence, other than the fingerprint evidence, tying the defendant to the offense. *Hobley*, 159 Ill. 2d at 308.

Applying the reasoning of *Youngblood* and *Hobley*, we first note that C.J. has not demonstrated any bad faith on the part of the State. In fact, he concedes no

bad faith; the report and records were destroyed and expunged by DCFS as routine procedure.

Secondly, the importance of the destroyed evidence is speculative at best. Although respondent asserts that the unfounded report included the alleged victim's exculpatory statement, this assertion is without basis. There may be a range of reasons to support the DCFS's "unfounded" finding of child abuse, any or none of which might exonerate respondent on the sexual assault charge.

Significantly, the juvenile court noted that the import of the "unfounded" finding in the DCFS report is undetermined. At the February 14, 1992, hearing on respondent's motion, the court stated that it did not know "if [the report was] unfounded because the DCFS worker just decided to take the day off or because they had an investigation and decided it was unfounded." Later the court stated that it did not know to whom the Division worker had talked or why he had made the unfounded finding. The court also stated that it had no idea what the Division's file would show.

In that same vein, we note that in order to be an abused child for purposes of the Abused and Neglected Child Reporting Act, the abuse must be inflicted either by a parent or immediate family member, a person responsible for the child's welfare, or any individual residing in the same home as the child, or a paramour of the child's parent. (Ill. Rev. Stat. 1991, ch. 23, par. 2053.) There is no evidence in the record to support the conclusion that C.J. shared any of the above relationships with his three-year-old cousin. Thus, although respondent disagrees, it is conceivable to us that DCFS found no credible evidence of abuse because the alleged victim was not by definition an abused child.

The point is that the most that can be said of the destroyed evidence is that it had the potential to exoner-

ate respondent. However, there is independent evidence, in the form of "outcry testimony," which may support the State's petition for wardship.

Consistent with *Youngblood* and *Hobley*, we find that the destruction of evidence did not constitute a deprivation of respondent's due process rights.

## CONCLUSION

For all of the foregoing reasons, we find the juvenile court's dismissal of the State's petition to have been improper. Therefore, we reverse the judgment of the appellate court, which affirmed the juvenile court's dismissal of the petition, reverse the judgment of the circuit court and remand to the circuit court for further proceedings.

*Judgments reversed;*
*cause remanded.*

JUSTICE HARRISON, dissenting:

In reversing the appellate and circuit courts, the majority asserts that the failure of the State to disclose exculpatory evidence before trial does not rise to the level of a constitutional deprivation. (166 Ill. 2d at 271.) This proposition is untenable, for it is in direct conflict with the holding of the United States Supreme Court. See *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194.

As a general rule, the State's failure to preserve potentially useful evidence constitutes a denial of due process where the defendant can demonstrate that the State acted in bad faith. (*Arizona v. Youngblood* (1988), 488 U.S. 51, 58, 102 L. Ed. 2d 281, 289, 109 S. Ct. 333, 337.) No showing of bad faith is required, however, where the evidence is lost or destroyed after defense counsel has requested access to it. (See *People v. Koutsakis* (1993), 255 Ill. App. 3d 306, 312.) In such a case, the defense is also relieved of the burden of making an

independent showing that the evidence had exculpatory value. The failure to preserve and disclose evidence once it has been requested by the defense violates due process without regard to the nature of the evidence. See *People v. Sleboda* (1988), 166 Ill. App. 3d 42, 53.

In the case before us, the defense made prompt and repeated efforts to obtain copies of the DCFS report on which his prosecution was predicated as well as copies of all DCFS records pertaining to that report. The defense requests were ignored, and the agency's records were destroyed, even though they indicated that the report against C.J. was, in fact, "unfounded." Because there is no way to reconstruct the contents of those records, there is no way, consistent with due process, that the proceedings against C.J. can be allowed to continue.

The majority attempts to minimize the prejudice to C.J. by arguing that there may have been no real significance to DCFS's determination that the report was "unfounded." Because the records were destroyed after the defense requested them, however, no further proof of their relevance was necessary. That they were the subject of a request made them presumptively material. To require the defense to make any further showing of materiality would place an impossible burden upon it. There is no way it can reasonably be expected to make arguments concerning materials that it has never seen and that no longer exist.

Wholly aside from this problem, the majority's analysis is based on a fundamental and obvious misreading of the statute. Under the law, an "unfounded report" is a report for which it has been "determined after an investigation that no credible evidence of abuse or neglect exists." (Ill. Rev. Stat. 1991, ch. 23, par. 2053.) As defined by DCFS,

> " 'credible evidence of child abuse or neglect' means that the available facts, when viewed in light of surrounding circumstances would cause a reasonable person to

believe that a child was abused or neglected." 89 Ill. Adm. Code ch. III, § 300.20 (1991).

The majority postulates that the Department's decision that there was no abuse here could have resulted from nothing more than a determination that C.J. was not a parent or immediate family member, a person responsible for the child's welfare, or an individual residing in the same home as the child, or a paramour of the child's parent. What the majority overlooks is that a child can be "abused" within the plain meaning of this statute even if the perpetrator is not among these specified groups. Abuse also occurs when a member of any of the groups listed *allows* physical injury, sexual abuse or torture to be inflicted on the child by a third party, such as C.J. Ill. Rev. Stat. 1991, ch. 23, par. 2053.

An equally fundamental error in the majority's position is that it fails to adequately appreciate the mechanics of the DCFS's investigatory process. If DCFS was simply concerned with C.J.'s relationship to the victim, the problem could have been detected by the department in its initial investigation as to whether the report was a "good faith indication of alleged child abuse." (See Ill. Rev. Stat. 1991, ch. 23, par. 2057.4(3).) No further action would have been taken. No formal investigation would have been required, and there would have been no need to classify the report, as was done here, pursuant to section 7.12 of the Abused and Neglected Child Reporting Act (Ill. Rev. Stat. 1991, ch. 23, par. 2057.12).

That the report in this case was determined to be unfounded presupposes that the Department concluded that this was a proper case for it to proceed to a formal investigation and that there was, in fact, no evidence of abuse. (Ill. Rev. Stat. 1991, ch. 23, par. 2058.1.) Given this, there is no basis for speculating that the Department's decision was simply a matter of technical definitions. Rather, our assumption must be that when the

Department decided to classify the report as unfounded following its investigation, it did so because it believed there was no merit to the substantive allegations against C.J. Considering that the report was the basis for the juvenile proceedings against C.J., the materiality of the Department's records to his defense is manifest, as the appellate court correctly recognized. 257 Ill. App. 3d at 904.

Contrary to what the majority holds, the denial of C.J.'s due process rights cannot be excused on the grounds that DCFS's destruction of the records is not attributable to the prosecution. The prosecution may not be accountable in court for the action of every State employee, but it should certainly be responsible for the destruction of evidence in child abuse cases where the destruction was carried out by the very agency charged by the General Assembly with responsibility for investigating child abuse reports. (See Ill. Rev. Stat. 1991, ch. 23, par. 2057.3.) In child abuse cases, DCFS's investigative role is equivalent to that of any other law enforcement agency. It may work in tandem with such agencies and delegate its investigatory functions to them. (See Ill. Rev. Stat. 1991, ch. 23, par. 2057.3.) Considering that the loss or destruction of evidence by the police is deemed to be the action of the State (see *Arizona v. Youngblood* (1988), 488 U.S. 51, 58, 102 L. Ed. 2d 281, 289, 109 S. Ct. 333, 337), there is no principled reason why the same should not be true when the culprit is DCFS.

Even if some valid distinction could be drawn, the majority's analysis would still fail. My colleagues assume that due process is only implicated by actions for which the State's Attorney is responsible. In taking this view, the majority confuses discovery requirements with constitutional obligations. It is true that under the criminal discovery rules promulgated by this court, the pros-

ecution is only responsible for those within the scope of its authority. For constitutional purposes, however, a governmental employee's relationship to the State's Attorney's office is irrelevant. Due process is not dependent on the government's table of organization. If a defendant's rights are violated, the deprivation is no less severe because the offending party worked for one agency rather than another. The effect on the defendant will be the same. All that is required for a due process violation is that there be State action, and DCFS, a department of the State of Illinois, is plainly a State actor. I therefore dissent.