SECOND DIVISION

December 31, 2001

No. 1--00--1628

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County.

)

) 

) 

)

JAMES BARKSDALE, ) Honorable

) William S. Wood,

Defendant-Appellant. ) Judge Presiding.

PRESIDING JUSTICE BURKE delivered the opinion of the court:  

Defendant James Barksdale appeals from an order of the circuit court summarily dismissing his second postconviction petition without an evidentiary hearing.  Following a jury trial, defendant was convicted in 1972 of rape, deviate sexual assault, and aggravated kidnaping, and we affirmed his convictions and sentences on direct appeal.  
People v. Barksdale
, 24 Ill. App. 3d 489, 321 N.E.2d 489 (1974).  Thereafter, defendant's subsequent initial postconviction petition was dismissed in 1985, and his second petition in 2000.  On appeal, defendant contends that he was entitled to the appointment of an attorney and an evidentiary hearing on his second postconviction petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122--1 (West 2000)) because his petition stated the gist of a meritorious constitutional claim based on his allegations that (1) pursuant to section 116--3 of the Code of Criminal Procedure (Code) (725 ILCS 5/116--3 (West 2000)), he was entitled to have DNA tests conducted on certain articles of the victim's clothing that the trial court had ordered preserved and (2) that the potentially exculpatory evidence of his innocence could not be tested because the State destroyed the evidence in 1982, thereby violating his constitutional rights.  For the reasons set forth below, we reverse and remand.  

We briefly recite some of the relevant testimony from defendant's 1972 trial.
(footnote: 1)  At trial, the victim testified that on June 23, 1971, at approximately 4 a.m., a man she later identified as defendant passed her in his car while she was walking down Sheridan Road in Chicago toward her house.  Defendant pulled up along side of her, jumped out of the car, hit her in the head, and pulled her back into his vehicle.  Defendant pushed her onto the floor in the back seat, placed what she believed was a gun to her head, and told her to be quiet or he would kill her.  Defendant began driving and continued to threaten to kill her while keeping his hand on her upper thigh.  

The victim further testified that at approximately 6:10 a.m., defendant stopped the car in an open area that she did not recognize.  He removed a cord from his trunk which he used to tie her hands behind her back, dragged her from the car, and threw her onto a sleeping bag that he had stretched on the ground.  Defendant ripped open her blouse and removed her bra and pants.  Thereafter, she complied with defendant's request to perform an act of "oral copulation" upon him, defendant then struck her above her right breast and on the side of her head and threatened to beat her further, and defendant then performed an act of "oral copulation" upon her.  She further stated that she was then allowed to put her clothing back on, and, a short time thereafter, defendant placed her back in the rear seat of the vehicle, defendant again ordered her to remove her clothing, and defendant forced her to have intercourse and anal intercourse with him.  Defendant subsequently dropped her off in an alley where she told two men nearby what had happened, called the police, and she was taken to the hospital.  

The victim also described the person who attacked her as a black male, 5' 10" tall, 150 to 175 pounds, 25 to 26 years of age, with ear-length sideburns, wire-rimmed glasses, a short-sleeved knit shirt, corduroy slacks, brown sandals, black socks, red underwear, small pock marks on his face under the sideburns, and no moustache.  She described his car as a black two-door Chevrolet Impala hardtop with a black interior.  She subsequently identified defendant as the attacker on August 3, 1971, in a police lineup of five men at the Evanston police station.  

A doctor from Holy Cross Hospital testified that he examined the victim on June 23, 1971, in the emergency room and took a vaginal smear which tested positive for the presence of spermatozoa.  A detective from the Evanston police department testified that on August 2, 1971, he saw defendant driving a 1968 black two-door Chevrolet Impala with a black vinyl top on Sheridan Road in Evanston.  In a parking lot on the campus of Northwestern University, the detective approached defendant who, at the detective's request, opened the trunk of his vehicle.  Defendant was placed under arrest and a search of the vehicle revealed a loaded chrome-plated, .32-caliber, automatic handgun underneath the driver's seat.  Another detective testified that after defendant's arrest, he recovered a pair of wire-rimmed glasses in a briefcase in the rear seat of defendant's vehicle.  

Two witnesses subsequently testified for the defense that defendant in June and July of 1971 always wore a moustache and had a medium-length natural haircut.  The State presented a rebuttal witness, who was the complaining witness in an indictment charging defendant with another rape, who testified that on July 8, 1971, at approximately 11 a.m., she received a ride from defendant in a two-door, black Impala on Sheridan Road in Chicago.  Defendant stopped his car on a dirt road after 30 or 40 minutes where the witness was confined for the next 4 hours.  It remained dark outside for three hours and was light outside for one hour.  The witness later identified defendant as a black male, 5' 10" tall, 170 pounds, with a short Afro, small sideburns, pock marks on his face, gold-rimmed glasses, and no moustache.  She testified that the next time she saw defendant at the Evanston police station on August 3, 1971, he was wearing a moustache.  On cross-examination, the witness testified that before entering defendant's car, she had consumed one-half of a bottle of wine.  She also stated that she originally told the police that defendant's car was a four-door hardtop, dark colored, possibly green, with a squeaky passenger door.  On redirect examination, the witness testified that during the incident with defendant, he had a chrome-plated revolver in his hand.  

The jury found defendant guilty of rape, deviate sexual assault, and aggravated kidnaping.  Defendant was sentenced to three consecutive terms of 50-100 years', 50-100 years', and 10-14 years' imprisonment, respectively, on these convictions.  His convictions and sentences were affirmed on direct appeal.  
Barksdale
, 24 Ill. App. 3d 489. 

Thereafter, defendant made attempts to obtain 
habeas
 
corpus
 relief, which failed.  Defendant filed his first petition for postconviction relief in January 1985.  The petition was dismissed as untimely.  None of the issues raised in defendant's prior appeals of his convictions and sentences or in his initial postconviction petition are at issue in the present appeal.  

On January 11, 2000,
(footnote: 2) defendant filed his 
pro
 
se
 petition for postconviction relief in the present case.  In the petition, defendant admitted that it was his "second Post Conviction Petition," but maintained that it was "based on Newly Discovered Evidence which could have proven [his] innocence."  Defendant alleged that his constitutional rights were violated in the following manner:

"The Chicago Police Department distroyed [
sic
] trial evidence 'Ordered Impounded by the trial judge, after trial', [
sic
] which could prove defendant's innocence, in violation of Equal Protection and Due Process of Law." 

Defendant further alleged the existence of a conspiracy by the State's Attorney's office and the Chicago police department to obstruct justice by destroying the "conclusive evidence that would have proven [his] innocence."  According to defendant, his rights under the eighth
 and fourteenth
 amendments to the United States Constitution were violated, especially in light of the "fact" that the police "arrested and accepted guilty pleas from the very possible perpetrator of the alleged offense charged against [him under] indictment number 71-2375" and violated the trial court's "Impounding Order."  As Exhibit "A" to his petition, defendant attached the "Impounding Order" issued by the trial court in case No. 71-2375, which stated:

"The Clerk of the Circuit Court of Cook County, Criminal Division is hereby ordered and directed to impound, preserve and protect the following articles of physical evidence which were introduced at the trial of the above indictment and maintain these articles for any future proceeding:

***

Victim's clothing including pants, shirt and pants belt[.]"  

On February 10, 2000, the trial court summarily dismissed defendant's 
pro
 
se
 petition for postconviction relief.  The trial court stated:

"All right.  In reviewing the file, it was so old, and in looking at case law, I can't find anything.  And there is a recent decision that kind of turns on whether there was bad faith or not.  

As far as the petition, that will be denied.  

***

Off call.  I am going to make a finding of no bad faith."    

This appeal followed.  

I. Successive Postconviction Petitions

We initially address the State's contention that the trial court properly dismissed defendant's petition because it was successive and untimely filed.  Noting that defendant's first petition, filed in January 1985, was dismissed in both the state and federal courts as untimely, the State argues that the "same procedural bar" applies to this second petition which was filed 28 years after defendant's 1972 conviction.  The State maintains that under the current version of the Act, a defendant is required to file a postconviction petition within three years of his original conviction.  The State also argues that because the Act contemplates only one petition, defendant's second petition should be rejected.  According to the State, defendant never made an attempt to show that in filing his second petition late, he lacked any "culpable negligence," and his claim is therefore "procedurally barred."  

The Act contemplates the filing of only one postconviction petition.  
People v. Jones
, 191 Ill. 2d 194, 198, 730 N.E.2d 26 (2000).  A trial court's ruling on the initial petition has a 
res
 
judicata
 effect on all claims that were raised or that could have been raised in the initial petition.  
Jones
, 191 Ill. 2d at 198.  The procedural bars to claims in a successive postconviction petition will be relaxed only where the defendant demonstrates cause for failing to raise the claims in the first petition and actual prejudice resulting from the claimed errors.  
People v. Flores
, 153 Ill. 2d 264, 279, 606 N.E.2d 1078 (1992).  "Cause" has been interpreted to mean some objective factor external to the defense that impeded efforts to raise the claim in an earlier proceeding.  
Jones
, 191 Ill. 2d at 199.

In 
People v. Erickson
, 183 Ill. 2d 213, 700 N.E.2d 1027 (1998), the supreme court addressed the issue of successive postconviction petitions, stating: 

"The [Act] contemplates the filing of only one postconviction petition, although successive petitions may be allowed where the proceedings on the initial petition were deficient in some fundamental way. [Citation.]" 
Erickson
, 183 Ill. 2d at 222-23.  

In 
Flores
, the supreme court recognized that the filing of successive postconviction petitions involves two competing interests: (1) the State's interest in providing a forum for the vindication of the petitioner's constitutional rights, and (2) the State's legitimate interest in the finality of criminal judgments.  
Flores
, 153 Ill. 2d at 274.  Although the 
Flores
 court  also stated that the filing of successive postconviction petitions "plagues that finality," it further stated that where the claimed error could not have been presented in an earlier proceeding, procedural bars may be "ineffectual in bringing about the finality which ordinarily follows direct appeal and the first post-conviction proceeding."  
Flores
, 153 Ill. 2d at 274-75.  In such situations, a second or subsequent postconviction petition may be filed.  
Flores
, 153 Ill. 2d at 275.  

This court's Fifth District's decision in 
People v. Rokita
, 316 Ill. App. 3d 292, 736 N.E.2d 205 (2000), is also instructive on the issue of a defendant's ability to file a successive postconviction petition.  In 
Rokita
, the defendant was convicted of five counts of aggravated criminal sexual assault, among other charges, and sentenced to 80 years' imprisonment.  The defendant subsequently filed a postconviction petition under the Act, which the trial court dismissed as frivolous and patently without merit.  His appeal of that dismissal was dismissed for want of prosecution.  
Rokita
, 316 Ill. App. 3d at 295-96.  The defendant then filed a "motion for forensic testing" pursuant to section 116--3 of the Code.  The trial court found that "identity" was an issue in the defendant's trial which involved the collection and testing of some DNA evidence, that the chain of custody had been established, and that the specific test requested had been accepted in the relevant scientific community.  The trial court, however, denied the motion because it found that the result of the proposed testing did not have the potential to produce new, noncumulative evidence relevant to the defendant's assertion of innocence.  
Rokita
, 316 Ill. App. 3d at 296.  The trial court also expressed its concern that the defendant was utilizing section 116--3 in an effort to file a second postconviction petition and obtain multiple postconviction hearings.  
Rokita
, 316 Ill. App. 3d at 297.  

On appeal, the 
Rokita
 court reversed the trial court and remanded the case, finding that, under section 116--3, the ultimate impact of the new, noncumulative evidence on the defendant's conviction was not relevant to the determination of whether the defendant was entitled to such testing.  The court also rejected the State's argument that section 116--3 had a time limit in which a motion seeking relief under that section must be filed.  
Rokita
, 316 Ill. App. 3d at 300-03.  

As indicated 
above, under certain circumstances, a defendant may file a successive postconviction petition even though such petitions were not specifically contemplated by the Act.  
Flores
 permitted a successive petition where the constitutional claim could not have been raised in the original petition.  In the present case, DNA testing was not available at the time of defendant's trial or at the time that his initial postconviction petition was considered.  A claim for such DNA testing, therefore, could not have been raised in that petition.  Additionally, although the Act now contains a provision requiring that a petition must be filed within three years of the defendant's conviction (725 ILCS 5/122--1 (West 1998)), and this time limit has been applied retroactively to convictions before 1991, as stated in 
Rokita
, section 116--3 does not contain a specific time limit within which relief must be requested under that section.  Additionally, section 116--3 of the Code did not become effective until January 1, 1998.  Defendant filed his petition based on section 116--3 in January 2000.  Under these circumstances, the record here does not support the State's argument that the petition was properly dismissed merely because it was successive or because it was time barred.  As a procedural matter, even if defendant's petition was untimely because of the three-year limitations period under the Act, cases such as 
Rokita
 indicate that defendant could have also filed a motion for relief directly under 116--3, raising the same issues as in his petition.  Accordingly, we find that the petition here was not time barred.

II. Allegations in the Petition

Defendant contends that instead of finding that the petition was frivolous or patently without merit, as required by the Act at the first stage of the postconviction proceedings, the trial court specifically found that "Mr. Barksdale did not file the petition in bad faith."
(footnote: 3)  According to defendant, based on this finding, he was entitled to the appointment of an attorney and further proceedings to determine whether the petition warranted an evidentiary hearing.  Defendant claims that his petition is an "either/or proposition," 
i
.
e
., either the State erred and his evidence still exists, entitling him to DNA testing, or the State violated his constitutional rights by  destroying the evidence that the trial court had ordered preserved.  He further claims that the evidence, if tested, would have created new, noncumulative evidence that would be material to his claim of innocence and that the evidence could not be obtained from any other source as it was unique.  Defendant maintains that he cannot establish the other elements of section 116--3, such as the "chain of custody," because the evidence is "out of his hands."  Defendant argues that he is not required to show that the State acted in bad faith in destroying the evidence or that the evidence would have actually proven his innocence since he had already shown that the State was placed on notice that it was required to preserve the evidence. 

The State admits in its brief that the impounded evidence was destroyed in March 1982, 10 years after defendant's conviction, and 16 years before defendant learned it was gone in 1998.  The State, however, contends that the petition was properly dismissed because defendant bears the burden of establishing that the evidence was destroyed in bad faith.  The State first claims that there is no evidence, or even an allegation, that the police were acting as the State's agent and that the destruction of the evidence by the police cannot be imputed to the State.  The State also argues that because defendant already had been convicted at the time that the evidence was destroyed and the evidence, therefore, was not "essential to and determinative of the outcome of his case," defendant was required to establish bad faith.  The State further claims that it was unlikely that defendant could establish the requirement of a sufficient "chain of custody" under section 116--3 because the trial court's impounding order makes no reference to "microbiological evidence."  According to the State, this suggests that the vaginal smear taken from the victim was not impounded or saved.  The State also argues that the Cook County Circuit Court Rules cited by defendant, which permit the destruction of trial evidence at certain times following a defendant's conviction, indicate that the evidence here was mistakenly destroyed pursuant to those rules and not in bad faith. 

In 
People v. Lipscomb
, 215 Ill. App. 3d 413, 574 N.E.2d 1345 (1991), DNA testing was accepted in Illinois as a scientific technique and as admissible evidence.  On January 1, 1998, section 116--3 of the Code, allowing defendants to request DNA testing where such testing was not available at the time of their trials, became effective.  725 ILCS 5/116--3 (West 1998).  Section 116--3 provides: 

"(a) A defendant may make a motion before the trial court that entered the judgment of conviction in his or her case for the performance of fingerprint or forensic DNA testing on evidence that was secured in relation to the trial which resulted in his or her conviction, but which was not subject to the testing which is now requested because the technology for the testing was not available at the time of [the] trial. Reasonable notice of the motion shall be served upon the State. 

(b) The defendant must present a 
prima
 
facie
 case that: 

(1) identity was the issue in the trial which resulted in his or her conviction; and 

(2) the evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material aspect. 

(c) The trial court shall allow the testing under reasonable conditions designed to protect the State's interests in the integrity of the evidence and the testing process upon a determination that: 

(1) the result of the testing has the scientific potential to produce new, noncumulative evidence materially relevant to the defendant's assertion of actual innocence; 

(2) the testing requested employs a scientific method generally accepted within the relevant scientific community." 725 ILCS 5/116--3 (West 1998).

A "free-standing" claim of innocence based on newly discovered evidence is viable as a postconviction claim under the Act.  
People v. Washington
, 171 Ill. 2d 475, 489, 665 N.E.2d 1330 (1996).  Such claims are to be resolved as any other claims under the Act.  
Washington
, 171 Ill. 2d at 489.  The evidence supporting the claim of actual innocence must be new, material, noncumulative, and of such conclusive character as would probably change the result on retrial.  
People v. Dunn
, 306 Ill. App. 3d 75, 80, 713 N.E.2d 568 (1999).  The newly discovered evidence must be evidence which was not available at the defendant's trial and which the defendant could not have discovered sooner through diligence.  
People v. Burrows
, 172 Ill. 2d 169, 180, 665 N.E.2d 1319 (1996); 
Dunn
, 306 Ill. App. 3d at 80
.  

Section 122--1 of the Act provides: 

"Petition in the trial court.  Any person imprisoned in the penitentiary who asserts that in the proceedings which resulted in his conviction there was a substantial denial of his rights under the Constitution of the United States or of the State of Illinois or both may institute a proceeding under this Article."  725 ILCS 5/122--1 (West 1994).  

Section 122--2.1(a)(2) of the Act provides:

"If the petitioner is sentenced to imprisonment and the court determines that the petition is frivolous or is patently without merit, it shall dismiss the petition in a written order, specifying the findings of fact and conclusions of law it made in reaching its decision."  725 ILCS 5/122.2--1(a)(2).  

The Act provides a supplemental proceeding for a defendant who alleges that he was substantially denied his constitutional rights at trial, but the filing of a postconviction petition does not entitle a defendant, as a matter of right, to an evidentiary hearing.  
People v. Wilson
, 307 Ill. App. 3d 140, 144-45, 717 N.E.2d 835 (1999).  
When determining whether to grant an evidentiary hearing, the court must take all well-pleaded facts in the petition and in the accompanying affidavits as true.  
Wilson
, 307 Ill. App. 3d at 145.  Nonfactual and nonspecific allegations in the petition, amounting to mere conclusions, are insufficient to require a hearing under the Act.  
Wilson
, 307 Ill. App. 3d at 145.  "To survive dismissal at the initial stage of the post-conviction proceeding, the petition need only present the gist of a meritorious constitutional claim."  
People v. Brown
, 169 Ill. 2d 94, 101, 660 N.E.2d 964 (1995).  In order for the petition to set forth the "gist" of a constitutional claim, the petition "need only present a limited amount of detail" and therefore does not need to set forth a claim in its entirety.  
People v. Edwards
, No. 87930 (September 20, 2001), quoting 
People v. Gaultney
, 174 Ill. 2d 410, 418, 675 N.E.2d 102 (1996).   

The Act creates a three-step process for adjudication of petitions for postconviction relief.  
People v. Lawrence
, 211 Ill. App. 3d 135, 137, 569 N.E.2d 1175 (1991).  The first step of this process requires that the trial court consider the petition to determine  whether it is frivolous or patently without merit, and if it is frivolous or patently without merit, the court should dismiss the petition.  If the petition is not frivolous or patently without merit, the court must appoint counsel to represent the defendant, if indigent.  
Lawrence
, 211 Ill. App. 3d at 138.  

This division's decision in 
Dunn
 is instructive here.  In 
Dunn
, the defendant was convicted of rape and aggravated battery, and his convictions and sentences were affirmed on direct appeal in 1983.  In January 1989, the defendant filed a 
pro
 
se
 postconviction petition raising several issues.  In 1992, the defendant wrote several letters to the State's Attorney requesting genetic testing.  In December 1995, the public guardian, on the defendant's behalf, filed a petition to compel genetic testing which was opposed by a motion by the State.  The defendant's petition was withdrawn in April 1996.  The trial court dismissed the defendant's postconviction petition with prejudice in June 1996.  While the defendant's notice of appeal was filed on the same day in the trial court, the notice was not filed in the appellate court until January 1998.  
Dunn
, 306 Ill. App. 3d at 76-78.  Also, although the defendant's claim for genetic testing was not raised in his postconviction petition, the 
Dunn
 court recognized that the claim had been raised in the defendant's correspondence with the State and by his counsel, before his petition was withdrawn, and that the statute permitting such testing was not in effect at the time his original petition was filed.  The 
Dunn
 court therefore considered the claim under the fundamental fairness exception to the waiver rule.  
Dunn
, 306 Ill. App. 3d at 79.  

The 
Dunn
 court further stated that "the defendant's appeal specifically raise[d] the issue of whether DNA testing can be granted as post-conviction relief when it was unavailable at the time of [the] defendant's trial."  
Dunn
, 306 Ill. App. 3d at 80.  After examining the requirements of section 116--3, the court found:

"*** Based on the accuracy and definitiveness of DNA testing, and the recent enactment of section 116-3 of the Code of Criminal Procedure, we agree with [the] defendant that he is entitled to such testing, provided that the required 
prima
 
facie
 case has been made."  
Dunn
 306 Ill. App. 3d at 80-81.  

The 
Dunn
 court remanded the case to the trial court to determine whether "any conclusive result is obtainable from DNA testing.  This would encompass a determination as to whether there was ejaculation and whether the essential evidence was preserved and available."  
Dunn
, 306 Ill. App. 3d at 81.  

In the present case, defendant's claim for DNA testing was  appropriately raised in his petition.  Defendant made a "free-standing" claim of innocence based on evidence that was not available to him at trial and which was material, noncumulative, and of a character that could change the result of his trial, if proven.  See 
Dunn
, 306 Ill. App. 3d at 79-80.  Also, we find that defendant has alleged facts in his petition sufficiently establishing a 
prima
 
facie
 case that he would have been entitled to DNA testing under section 116--3 if the physical evidence from his trial still existed.  Addressing the requirements under section 116--3, we first briefly note that there is no dispute that identity was a major issue in defendant's conviction.  During his trial, the State's case consisted primarily of identification testimony.  Additionally, defendant presented a defense that he had been misidentified by the victim.  

With respect to the section 116--3 requirement that defendant establish a reliable chain of custody for the evidence on which testing is requested, we find that the allegations of the petition regarding this requirement alleged facts sufficient to satisfy the first stage of the postconviction hearing process.  The record contains an order requiring the evidence to be preserved.  No expiration date is contained in the order.  Defendant alleged that the State destroyed the evidence in 1982 in violation of the order, and the State has admitted in this appeal that the evidence was, in fact, destroyed.  These alleged facts alone suggest that the evidence was in the control of the State and destroyed by the police in violation of a valid court order.  Although neither the order nor the record indicates whether the evidence would have yielded a useful DNA sample if the items had been preserved, defendant was not required to prove this for purposes of the first stage of the postconviction process under the Act.  In 
Dunn
, this court remanded a case to the trial court for a determination in the first instance of whether the physical evidence in that case would have provided a DNA sample.  Here, based on the record presented, had the evidence not been destroyed, defendant would have been at least entitled to the same determination.  We find, therefore, that but for the destruction of the evidence by the police, defendant would have been able to establish a chain of custody.  

We further find that, assuming that the destroyed evidence was still available to test, defendant would also be able to satisfy subsection (c) of section 116--3.  The DNA evidence, if any, would produce, as stated above, new, noncumulative evidence materially relevant to defendant's assertion of innocence.  Additionally, DNA testing, as stated above in 
Dunn
, is now considered very reliable and is widely accepted.  Accordingly, we find that the allegations of defendant's postconviction petition sufficiently satisfied the requirements of section 116--3, entitling defendant to DNA testing.   Since the evidence has been destroyed, as admitted by the State, preventing the testing to which defendant would have been entitled, we consider its affect on defendant's petition and, therefore, whether or not defendant was required to demonstrate that the evidence was destroyed in bad faith in order to prove that his constitutional rights were violated.  

The State relies heavily on 
Arizona v. Youngblood
, 488 U.S. 51, 102 L. Ed. 2d 281, 109 S. Ct. 333 (1988) (Stevens, J., concurring, and Blackmun, J., dissenting, with Brennan and Marshall, JJ., joining), in support of its contention that a defendant must show that the evidence was destroyed in bad faith.  In 
Youngblood
, the defendant was convicted of child molestation, sexual assault, and kidnaping.  During the treatment of the victim, doctors, using a "sexual assault kit," collected evidence of the attack, including samples from the victim's rectum and mouth and samples of his blood, saliva, and hair, which were refrigerated at the police station.  The victim's underwear and T-shirt, which contained small amounts of semen, were also collected by the police, but not refrigerated or frozen.  
Youngblood
, 488 U.S. at 52-53, 102 L. Ed. 2d at 286, 109 S. Ct. at 335.  Although a criminologist determined from the samples in the kit that sexual contact had occurred, he did not perform any other tests and placed the samples back in the refrigerator.  During a subsequent test of the stains on the underwear and T-shirt, the criminologist was unable to obtain any conclusive results due to the small quantity of semen present.  
Youngblood
, 488 U.S. at 54, 102 L. Ed. 2d at 286-87, 109 S. Ct. at 335.  The defendant presented the defense at trial that the victim had erred in identifying him in a photographic lineup as the perpetrator of the crime.  A defense witness testified as to what the samples might have shown if tests had been performed on them shortly after they were gathered or by later tests if the clothing had been properly refrigerated.  The trial court instructed the jury that if they found that the State had destroyed or lost the evidence, they might "infer that the true fact is against the State's interest."  
Youngblood
, 488 U.S. at 54, 102 L. Ed. 2d at 286-87, 109 S. Ct. at 335.  The jury found the defendant guilty, but the Arizona Court of Appeals reversed, finding that the loss of the evidence material to the defense was a denial of due process.  
Youngblood
, 488 U.S. at 54, 102 L. Ed. 2d at 286-87, 109 S. Ct. at 335.  

The United States Supreme Court granted 
certiorari
 to consider the extent to which the due process clause of the fourteenth amendment requires the State to preserve evidentiary material that might be useful to a criminal defendant.  Considering the "'area of constitutionally guaranteed access to evidence,'" the 
Youngblood
 court reversed, finding that the defendant was required to demonstrate bad faith on the part of the State in the destruction or loss of the evidence.  
Youngblood
, 488 U.S. at 55, 102 L. Ed. 2d at 287, 109 S. Ct. at 336, quoting 
United States v. Valenzuela-Bernal
, 458 U.S. 858, 867, 73 L. Ed. 2d 1193, 1203, 102 S. Ct. 3440, 3446 (1982).  Distinguishing cases such as 
Brady v. Maryland
, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963), where the State failed to disclose to the defendant material, exculpatory evidence and where good or bad faith of the State is therefore irrelevant, the Court found that the due process clause "required a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than it could have been subjected to tests, the results of which might have exonerated the defendant."  
Youngblood
, 488 U.S. at 57, 102 L. Ed. 2d at 289, 109 S. Ct. at 337.  The Court justified this difference in treatment when potentially exculpatory evidence is permanently lost in order to avoid placing on the courts the "'treacherous task of divining the import of materials whose contents are unknown and, very often, disputed'" (
Youngblood
, 488 U.S. at 58, 102 L. Ed. 2d at 289, 109 S. Ct. at 335, quoting 
California v. Trombetta
, 467 U.S. 479, 486, 81 L. Ed. 2d 413, 421, 104 S. Ct. 2528, 2532 (1984)) and placing on the police an absolute duty to retain and preserve material that might be of conceivable evidentiary significance in a particular prosecution.  
Youngblood
, 488 U.S. at 58, 102 L. Ed. 2d at 289, 109 S. Ct. at 337.  The 
Youngblood
 Court then held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."  
Youngblood
, 488 U.S. at 58, 102 L. Ed. 2d at 289, 109 S. Ct. at 337.  

In 
People v. Campbell
, 252 Ill. App. 3d 624, 625 N.E.2d 130 (1993), the court followed the 
Youngblood
 "bad faith" test.  In 
Campbell
, the police destroyed a "Vitullo kit," containing vaginal swabs and pubic hair combings taken from the victim of a sexual assault, pursuant to police regulations where the State had failed to write a letter requesting that the kit be preserved.  The 
Campbell
 court found that nothing more could be said of the kit than that the evidence might have possibly exculpated the defendant.  Absent a showing of bad faith on the part of the police, the 
Campbell
 court affirmed the defendant's conviction following the destruction of the kit.  
Campbell
, 252 Ill. App. 3d at 630.

Defendant relies on 
People v. Hobley
, 182 Ill. 2d 404, 696 N.E.2d 313 (1998), in which a jury found the defendant guilty of seven counts of felony murder, one count of arson, and seven counts of aggravated arson relative to a fire that started in the defendant's apartment building, killing his wife and child, among others.  The defendant was sentenced to death and his convictions and sentence were affirmed on direct appeal to the supreme court.  
People v. Hobley
, 159 Ill. 2d 272, 637 N.E.2d 992 (1994).  The defendant subsequently filed a second amended petition for postconviction relief, which was dismissed without an evidentiary hearing.  

On appeal of the dismissal of the defendant's postconviction petition, the 
Hobley
 court affirmed in part, reversed in part, and remanded the case for an evidentiary hearing on the petition.  
Hobley
, 182 Ill. 2d 404.  With respect to the 
Hobley
 defendant's allegations in his petition relevant to the present case, the court reversed the dismissal of the defendant's allegations that the State suppressed the results of certain fingerprint tests performed on a gas can found at the scene of the fire that were negative and failed to disclose the existence of a second gas can that was also found near the place where the fire was believed to have begun.  The defendant also alleged that the State destroyed this second gas can shortly after the defendant issued a subpoena requesting its disclosure during the postconviction proceedings.  The defendant attached evidence supporting his allegations, including documents showing that the police inventoried certain evidence under a second identification number that was never disclosed to the defendant.  The record also demonstrated that the police officer who ordered the destruction of the second gas can never mentioned the existence of that gas can in his testimony at the defendant's trial.  
Hobley
, 182 Ill. 2d at 428-31, 441.  The 
Hobley
 court first found that the defendant had made a substantial showing that the State had failed to disclose two items of material, exculpatory evidence that it had in its possession in violation of 
Brady
.  The court further agreed with the defendant that, "assuming for the sake of argument that 
Youngblood
 applies," his petition also made a sufficient showing that the State acted in bad faith in destroying the gasoline can.  The 
Hobley
 court relied on various facts supporting a finding that the destruction of the second can was motivated by bad faith, including evidence that the police catalogued evidence under a second number that was never disclosed, that the officer who ordered the destruction of the second gas can, after a request for it, never testified to its existence at trial, and that the actual circumstances surrounding the destruction of the can were not known because the State refused to produce any information without a court order.  
Hobley
, 182 Ill. 2d at 440-41.  The court further found that the defendant had sufficiently shown that the gas can was important relative to the evidence presented against him because the evidence at trial established that the fire was intentionally ignited through the use of gasoline.  The 
Hobley
 court remanded the case for an evidentiary hearing with respect to a possible 
Brady
 violation and to determine whether the gas can was destroyed in bad faith, as contemplated by 
Youngblood
.  
Hobley
, 182 Ill. 2d at 442-43.  

Here, defendant's reliance on 
Hobley
 in support of his argument that he is not required to show bad faith is misplaced.   
Hobley
 relied in large part on 
Brady
, and the due process issues addressed in 
Brady
 are inapplicable here.  When potentially exculpatory evidence is withheld from a defendant before or during trial, under 
Brady
, the intent of the State is irrelevant in considering whether the defendant's due process rights were violated.  The present case does not involve a situation where potentially exculpatory evidence was withheld from defendant prior to his conviction.  At the time of defendant's trial, the evidence was neither exculpatory nor incriminating with respect to DNA because that type of testing was not yet available.  Defendant was convicted on substantial identification testimony, and his conviction was affirmed on direct appeal.  The present case, therefore, does not raise due process concerns relative to an unfair trial, as in 
Brady
, where the defendant's conviction was tainted by the fact that the State failed to disclose certain evidence which also may have been destroyed and unavailable at a retrial.  For purposes of the present appeal, defendant is deemed to have had a fair trial and due process, relative to his trial, is not an issue.  The issue here is destruction of new evidence that became available after the trial, due to advancements in technology, that may or may not have been exculpatory. 
 

Although not exactly on point with the facts of the present case, we find the reasoning in 
Youngblood
 instructive on the issue here.  
Youngblood
 involved potentially exculpatory evidence, which both the defendant and the State knew existed, but which was in the control of the State or the police at the time that it was lost or destroyed, making it unavailable to the defendant.  In this sense, 
Youngblood
 is similar to the present case.  Because 
Youngblood
 requires that a defendant show that potentially exculpatory evidence was destroyed in bad faith in order to establish a violation of his due process rights, 
prior to his conviction
, we find that a defendant should also be held to the same showing of the "bad faith" requirement in order to establish a violation of his due process rights when new, potentially exculpatory evidence is destroyed 
after his conviction
.  Although we have found no Illinois cases extending the 
Youngblood
 "bad faith" requirement to facts similar to the present case, we similarly have not found any cases suggesting that a defendant is afforded greater due process protection 
after
 a conviction than 
before
 one.  As stated above, defendant was convicted as a result of a fair trial.  It would be illogical to relieve defendant of the requirement to show bad faith on the part of the State or the police where the evidence was destroyed after a fair trial, as opposed to during the trial.  

We briefly note that defendant's reliance on 
People v. Newberry
, 166 Ill. 2d 264, 652 N.E.2d 315 (1995), is also misplaced.  In 
Newberry
, the supreme court held that the defendant was not required to prove bad faith on the part of the State to demonstrate a violation of his due process rights where a police lab technician inadvertently destroyed suspected narcotics evidence that the State had intended to use to convict the defendant of unlawful possession of a controlled substance, and which the defendant had requested in discovery in order to subject the substance to his own tests.  The 
Newberry
 court affirmed the dismissal of the indictment against the defendant based on the destruction of the evidence, distinguishing 
Youngblood
 and finding that the suspected drugs at issue were more than "potentially useful" and were, instead, "essential to and determinative of the outcome of the case."  
Newberry
, 166 Ill. 2d at 315.  Unlike 
Newberry
, where the disputed evidence was the basis upon which the State was prosecuting the defendant, in the present case, the disputed evidence, 
i
.
e
., any DNA material, was not used in the prosecution of defendant.  Defendant was convicted independently of the potentially exculpatory evidence at issue that was destroyed by the State.  The most that can presently be said about that evidence is that it was "potentially useful" to defendant and, based on 
Newberry
, a defendant is not relieved from demonstrating bad faith on the part of the State in such situations.  

Notwithstanding the foregoing, defendant here attached an order to his postconviction petition that was entered at the time of his conviction, requiring the clerk of the circuit court to impound and preserve certain evidence.  Defendant's petition alleges that this evidence was destroyed as part of a conspiracy between the police and the State, precluding him from having DNA tests conducted on the evidence which allegedly would establish his innocence.  The State admits that the evidence was destroyed in 1982.  Although we have found that defendant is required to show that the destruction was performed in bad faith on the part of the State in order to establish a due process violation, defendant was not required to establish bad faith for purposes of the first stage of the postconviction proceeding.  Defendant needed only to state the gist of a meritorious constitutional claim, and the trial court could dismiss his petition only if it found that the petition was frivolous or patently without merit.  We therefore find that the facts alleged in defendant's petition, which are uncontradicted in the record before us, do state the gist of a meritorious constitutional claim because allegedly potentially exculpatory evidence had been destroyed despite the trial court's order requiring its preservation.  

Additionally, the record indicates that although the trial court dismissed the petition at this first stage, it never declared that the petition was, in fact, frivolous or patently without merit.  The trial court stated only that it found "no bad faith."  It is unclear whether the trial court was referring to the actions of defendant in filing the petition or the actions of the State and the police in destroying the evidence.  Regardless of the intent of the trial court, a determination regarding "bad faith" by either side was not an issue before the court at this first stage of the postconviction proceeding.  We make no finding on this record whether or not there was, in fact, bad faith in the destruction of the evidence, but we find that, based on the allegations of defendant's postconviction petition and the low pleading threshold that must be met to reach the second stage of proceeding under the Act, the trial court erred in summarily dismissing the petition.  

For the reasons stated, we reverse the judgment of the circuit court and remand this matter for further proceedings under the Post-Conviction Hearing Act.  

Reversed and remanded.  

GORDON and CAHILL, JJ., concur.  

FOOTNOTES
1:
A more complete statement of facts is included in 
Barksdale
 in which this court affirmed defendant's convictions and sentences on direct appeal
.  
Barksdale
, 24 Ill. App. 3d 489.  

2:
Defendant's petition also indicates that it was filed on January 19, 2000.  

3:
The transcript of the trial court's dismissal of defendant's postconviction petition does not contain this specific finding as it is phrased by defendant in his brief.